GREENSBORO-HIGH POINT AIRPORT AUTHORITY v. PEARL TAYLOR IR-VIN, CHARLES WATSON IRVIN, JR. AND WIFE, MARY S. IRVIN, JOHN LAFAYETTE IRVIN AND WIFE, NANCY B. IRVIN, DORIS IRVIN EGERTON AND HUSBAND GEORGE G. EGERTON

No. 7718SC817

(Filed 20 June 1978)

1. **Eminent Domain § 7.7— good faith taking for public purpose—lack of necessity alleged—insufficient allegations**

    In a condemnation proceeding where petitioners sought to acquire title to land owned by respondents for the purpose of expanding a regional airport, respondents' contention that petitioner failed to show a necessity for the taking of their land was not before the court on appeal, since petitioner carried its burden of proving that the land in question was being taken in good faith for a public purpose, but respondents made no specific allegations tending to show bad faith, malice, wantonness or oppressive and manifest abuse of discretion by petitioner.

2. **Eminent Domain § 7.3— condemnation proceeding—prior good faith negotiations required**

    In a condemnation proceeding instituted by petitioner to acquire title to land owned by respondents, evidence was sufficient to support the trial court's finding that petitioner negotiated in good faith for the purchase of respondents' property prior to instituting condemnation proceedings where such evidence tended to show that petitioner was aware that respondents felt that their land was worth in excess of one million dollars; petitioner offered

respondents an amount equal to the highest of several appraisals secured by petitioner; the offer was rejected by respondents; and petitioner made no counter offer, such offer not being necessary for compliance with G.S. 40-11 and G.S. 40-12 which require a condemnor to "make a bona fide effort to purchase by private negotiation" prior to instituting condemnation proceedings.

**3. Eminent Domain § 7— airport authority—statutory authority to institute condemnation proceedings**

Respondents' contention that G.S. 40-10 prohibits an airport authority from condemning the land in question because of the presence thereon of one or more dwelling houses is without merit, since G.S. 40-10 applies only to corporations named in Article 1 of G.S. Chapter 40 but not to corporations deriving their power to condemn from some other act of the legislature, and the airport authority derives its power to condemn from Chapter 98, Public-Local Laws of 1941 as amended.

APPEAL by respondents from *Walker (Hal H.), Judge.* Judgment entered 7 July 1977 in Superior Court, GUILFORD County. Heard in the Court of Appeals 10 March 1978.

On 1 July 1975, petitioner Greensboro-High Point Airport Authority (Authority) filed its petition instituting condemnation proceedings pursuant to G.S. Chapter 40, seeking to acquire fee simple title to a 90.35 acre tract of land owned by respondents for purposes of the expansion of the Greensboro/High Point/Winston-Salem Regional Airport. Responses were filed on behalf of the respondents challeging, *inter alia*, the necessity of the taking of their land, the sufficiency of the Authority's effort to purchase the land by private negotiations, the constitutionality of the taking of the property, and denying, generally, the allegations of the Authority's petition.

The matter came on for hearing before John F. Yeatts, Jr., Assistant Clerk of Superior Court of Guilford County, on 11 May 1976, at which time the parties presented evidence. On 5 August 1976, an order was entered containing findings of fact and conclusions of law, overruling respondents' defenses, and appointing Commissioners of Appraisal to determine the compensation which the Authority should pay to respondents.

On 27 August 1976, the Commissioners took their oath and conducted a hearing. On 24 November 1976, the Commissioners filed their report with the clerk, assessing respondents' damages at $310,000.

Respondents filed objections and exceptions to the report of the Commissioners and the matter was heard by J. P. Shore, Clerk of Superior Court of Guilford County; on 28 February 1977, a Judgment of Confirmation was filed by the clerk confirming the report of the Commissioners. Respondents gave notice of appeal to superior court.

Upon stipulation of the parties, the superior court determined the appeal based upon the record of the proceedings before the clerk, which consisted essentially of transcripts of testimony and exhibits. Based upon the record and the oral arguments presented on behalf of the parties, the trial court, on 7 July 1977, entered judgment setting out findings of fact and conclusions of law favorable to the Authority, overruling respondents' various exceptions and objections, and affirming the Judgment of Confirmation except insofar as it related to the amount of compensation to be paid to respondents, upon which question respondents are entitled to a trial by jury.

Respondents gave notice of appeal to this Court from the judgment of the superior court.

The factual circumstances which have given rise to this litigation are, to the extent necessary for a determination of this appeal, reflected in the trial court's findings of fact, pertinent paragraphs of which are set out in the opinion which follows.

*Cooke & Cooke, by William Owen Cooke, for petitioner.*

*Armistead W. Sapp, Jr., and Dees, Johnson, Tart, Giles & Tedder, by J. Sam Johnson, Jr., for respondents.*

BROCK, Chief Judge.

Respondents' challenge to the Authority's efforts to annex the land in question is brought forward in three assignments of error presented in three arguments. At the outset, we note that the Authority derives its existence and powers from Chapter 98, Public-Local Laws of 1941, as amended. Section 7 of said Chapter 98, as amended by Chapter 601, Session Laws of 1943 and Chapter 793, Session Laws of 1969, authorizes the Authority to acquire needed property by exercise of the power of eminent domain pursuant to Chapter 40 of the North Carolina General Statutes. Section 6 of the aforementioned Chapter 98, Public-

Local Laws of 1941, declares that any lands acquired, owned, etc. by the Authority are so acquired, owned, etc. for a public purpose. *See also* G.S. 63-5. It is also clearly established by judicial decisions that the taking of land for the establishment and maintenance of a municipal airport is for a public purpose. *Vance County v. Royster*, 271 N.C. 53, 155 S.E. 2d 790 (1967).

[1]   For their first assignment of error, respondents contend that petitioner has failed to show a necessity for the taking of their land. Respondents present various factual arguments and legal theories in an attempt to raise a defense of lack of necessity, primarily aimed at a failure of the Authority to show precisely when the land will be needed for the specific use envisioned. However, we hold that the allegations of the responses were not adequate to raise the question of necessity in the trial court and the question is thus not before this Court on appeal.

As noted *supra*, the taking of land for airport purposes is a taking for a public purpose. As a general rule, once the public purpose is established, the necessity or expediency of the taking is a legislative, and not a judicial question. *City of Charlotte v. McNeely*, 281 N.C. 684, 190 S.E. 2d 179 (1972); *Jeffress v. Greenville*, 154 N.C. 490, 70 S.E. 919 (1911). To the foregoing rule proscribing judicial interference with the condemning body's determination of necessity, there is an exception, to wit: "Upon *specific allegations* tending to show bad faith, malice, wantonness, or oppressive and manifest abuse of discretion by the condemnor, the issue raised becomes the subject of judicial inquiry as a question of fact to be determined by the judge." (Emphasis added.) *City of Charlotte v. McNeely, supra,* 281 N.C. at 690, 190 S.E. 2d at 185, and cases cited therein.

The Authority commenced this action by filing a verified petition wherein the jurisdictional requirements as set out by G.S. 40-12 were fully alleged, including allegations as to necessity. An examination of the responses filed by respondents reveals no allegations as to necessity which rise above a denial of petitioner's allegations; there are no "specific allegations tending to show bad faith, malice, wantonness, or oppressive and manifest abuse of discretion" so as to invoke judicial review of the Authority's determination. *See Redevelopment Commission v. Grimes*, 277 N.C. 634, 178 S.E. 2d 345 (1971).

The sole factual question raised by the Authority's allegations of, and respondent's denial of necessity for condemnation is whether the property is being condemned in good faith to conduct public business. Webster, Real Estate Law in North Carolina § 358, pp. 479-480 (1971). The trial court made the following pertinent findings of fact (parenthetical references to the transcript of hearing before the Clerk of Superior Court and to exhibits are omitted):

"V. Petitioner's Board of Directors, at a meeting held on 19 March 1968, approved a plan for the expansion and enlargement of the facilities of the Greensboro/High Point/Winston-Salem Regional Airport prepared by Paul Stafford Associates-Arnold Thompson Associates, Inc. Said plan was entitled 'Master Plan for the Greensboro/High Point/Winston-Salem Regional Airport'. This plan provided for the construction of a new terminal building, new cargo handling facilities and other facilities connected with the airport. Said plan provided for such new construction in the northwest quadrant for the four quadrants formed by the airport runways entitled '5-23' and '14-32'. The relocation and expansion of facilities shown by said plan was to enable petitioner to provide adequate facilities for the rapid increase in the use of the airport by members of the public and to meet the increased demands of the public for airport services. The plan included the property owned by respondents which is described in Paragraph VI of the petition as part of the property which it would be necessary for petitioner to acquire in order to carry out the expansion plan."

\* \* \*

"VII. In 1970, new federal regulations required the construction of a new taxiway parallel to Runway 5-23 at a location other than the location shown in the 1968 Master Plan. As a result, the cargo area shown on the 1968 Master Plan had to be relocated, and, to that end, a layout plan was prepared by Southern Mapping and Engineering Company changing the 1968 Master Plan by moving the proposed new location of the cargo area for the expanded airport facilities onto said tract of land owned by respondents. This new

layout plan which changed the 1968 Master Plan was approved by the Board of Directors of petitioner at a meeting held on 24 May 1971."

\* \* \*

"X. The Board of Directors of petitioner, at a meeting held on 29 August 1974, approved a 1973 update of the 1968 Master Plan which incorporated the amendment to the 1968 Master Plan effected by the layout plan prepared by Southern Mapping and Engineering Company which had been approved by the Board of Directors at a meeting held on 24 May 1971. The update of the 1968 Master Plan is entitled 'Master Plan for the Greensboro/High Point/Winston-Salem Regional Airport' and it was prepared by Arnold Thompson Associates, Inc. This 1973 Master Plan included respondents' property as a part of the expanded airport and also designated its use for cargo area."

\* \* \*

"XII. Respondents' property is located in the northwest quadrant of the airport which is the area in which the projected expansion is to be located. Petitioner has already carried out many of the proposals for expansion set forth in the 1968 Master Plan. Two Fixed Base Operations are now located in the northwest quadrant of the airport as well as a new Control Tower and a new Weather Bureau. Petitioner has employed an architect to design a new terminal building to be constructed in the northwest quadrant as contemplated by the Master Plan. The architect has also been retained to design cargo facilities, but is not presently working on this project."

\* \* \*

"XIV. Public interest and public necessity require petitioner to take and acquire for the use and benefit of petitioner and the public the fee simple title to the tract of land located near the Greensboro/High Point/Winston-Salem Regional Airport in Friendship Township, Guilford County, North Carolina, which is described in Paragraph VI of the petition. Petitioner in good faith has found that it requires said tract of land described in Paragraph VI of the petition

for the purpose of carrying on and conducting public business which petitioner is authorized to conduct and carry on. Said tract of land is needed and required in order that petitioner may use the same for cargo handling activities in connection with the planned expansion of the Greensboro/High Point/Winston-Salem Regional Airport, including the construction of a cargo building thereon, and also in order to facilitate the use by petitioner of its other properties for airport purposes and, in addition, said property is required in connection with the general development and expansion by petitioner of the Greensboro/High Point/Winston-Salem Regional Airport. Said acquisition of said property by petitioner in fee simple is necessary for the proper maintenance, improvement and development of the airport."

These findings of fact, which establish that the Authority carried its burden of proof to show that the land in question is being taken in good faith for a public purpose, are supported by evidence which was before the trial court and are thus conclusive on appeal. *Blackwell v. Butts*, 278 N.C. 615, 180 S.E. 2d 835 (1971). Respondents' first assignment of error is overruled.

[2] For their second assignment of error, respondents contend that the evidence does not support the trial court's finding that the Authority negotiated in good faith for the purchase of respondents' property prior to instituting condemnation proceedings. We disagree.

The condemnation proceedings set out in Article 2 of G.S. Chapter 40 can be invoked by a corporation possessing the power of eminent domain if the condemnor "is unable to agree for the purchase of any real estate required" for its purposes. G.S. 40-11. A petition filed to institute condemnation proceedings must allege "that the corporation has not been able to acquire title [to the real estate], and the reason of such inability." G.S. 40-12. In the present case, the Authority alleged that it made a good faith effort to purchase the land in question but that it was unable to agree on a price with respondents. This allegation was denied by respondents, thus raising an issue of fact for the trial judge, upon which the Authority bore the burden of establishing the facts as alleged. Webster, *supra*, § 358, pp. 479-480.

As to the question of the Authority's attempts to acquire the property by purchase, the trial court made the following findings

of fact (parenthetical references to the transcript and exhibits
are, once again, omitted):

"VIII. As a result of a request by petitioner's staff per-
sonnel, appraisals of the property of respondents described
in Paragraph VI of the petition were made by Wayne Sud-
derth and Calvin Reynolds, both competent real estate ap-
praisers. On 19 February 1973, Wayne Sudderth reported an
appraisal of $225,000.00 for respondents' property, and on 20
March 1973 Calvin Reynolds report an appraisal of
$244,375.00 for respondents' property. Calvin Reynolds was
also employed by petitioner to conduct negotiations for the
purchase of properties needed by the Authority in its expan-
sion program. One of the employees of Mr. Reynolds in the
performance of these duties was R. J. Leftwich. In April,
1973, Mr. Leftwich endeavored to determine on behalf of
petitioner, if respondents might be interested in selling this
property to petitioner for the sum of $225,500.00. Mr. Left-
wich met with respondents and conveyed to respondents an
offer by petitioner to purchase respondents' property for
$225,500.00. Respondents indicated such amount was totally
insufficient and respondent Charles W. Irvin, Jr., stated that
he thought the property was worth at least $10,000.00 to
$12,000.00 an acre plus the replacement cost of all im-
provements, a sum in excess of $1,000,000.00 The results of
this conference were conveyed to petitioner on 14 May 1973.

IX. The Board of Directors of petitioner, at a meeting
held on 6 August 1973, adopted a resolution authorizing the
Executive Director of petitioner to offer to pay the appraised
value of respondents' property as determined by competent
appraisers, subject to any agreement to accept such apprais-
ed value being approved by the land subcommittee of the
Board of Directors and by the Authority. Said resolution fur-
ther provided that if respondents' property could not be pur-
chased at its appraised value as so determined, petitioner
should institute condemnation proceedings therefor. At the
time this resolution was adopted, the 1968 Master Plan ap-
proved by the Board of Directors of petitioner on 19 March
1968 had been amended by the layout plan prepared by
Southern Mapping and Engineering Company approved by
the Board of Directors of petitioner on 24 May 1971 so as to
show that the plan for the use of respondents' property was
for a cargo area."

\*    \*    \*

"XI. Petitioner's Executive Director obtained new appraisals of respondents' property from Wayne Sudderth and Calvin Reynolds, both competent appraisers. On 20 June 1975, Wayne Sudderth appraised respondents' property at $225,000.00, and Calvin Reynolds on 11 July 1975 appraised respondents' property at $254,000.00. On 12 July 1974, petitioner's Executive Director, on behalf of petitioner, offered to purchase respondents' property for $254,000.00, and requested a response within 30 days. Such offer was made by letter to C. W. Irvin, Jr., Doris Irvin Egerton, John L. Irvin and Pearl T. Irvin. There was no response to said offer by Charles Watson Irvin, Jr. John L. Irvin responded by letter dated 1 August 1974, in which he rejected petitioner's offer of $254,000.00. At the time said letter was written by petitioner's Executive Director, respondent Charles W. Irvin, Jr., valued respondents' property in excess of One Million Dollars ($1,000,000.00), and would not accept any amount less than Twelve Thousand to Thirteen Thousand Dollars per acre for respondents' property or a total sum of over One Million Dollars plus the replacement cost of the clubhouse and all other buildings."

\*    \*    \*

"XVII. Petitioner, acting through its officer, agents and representatives, has made an effort in good faith to purchase and acquire title to the real property described in Paragraph VI hereof, from the owners thereof, to wit: respondents named herein, but petitioner and said respondents have been unable to agree on a price or compensation for said tract of land."

In our opinion, the preliminary facts are found in VIII, IX and XI, *supra*, are supported by the evidence and are thus conclusive on appeal, and support the ultimate finding of fact XVII, *supra*.

G.S. 40-11 and 40-12 require a condemnor to "make a bona fide effort to purchase by private negotiation" prior to instituting condemnation proceedings. *Power Co. v. King*, 259 N.C. 219, 220-221, 130 S.E. 2d 318, 320 (1963). The Authority was aware that

resondents felt that their land was worth in excess of $1,000,000.00. The Authority's resolution of 6 August 1973 authorized an offer to purchase respondents' land at its appraised value; an offer was conveyed to respondents by letter of 12 July 1974, offering the highest of several appraisals secured by the Authority. No higher offer was authorized by the Authority. The offer was rejected by letter by respondent John L. Irvin, although he indicated his willingness to sell at a reasonable and just price. However, we do not feel upon the facts of this case, that the Authority was required to explore the matter further since earlier negotiations had revealed that respondents would sell only at a price far in excess of that which the Authority was willing to offer. *See Power Co. v. Moses*, 191 N.C. 744, 133 S.E. 5 (1926). In many respects, the facts of the instant case are similar to those in *Murray v. City of Richmond*, 257 Ind. 548, 276 N.E. 2d 519 (1971), wherein the condemnor offered to purchase property at its appraised value of $40,000 and the condemnees counter-offered in the amount of $500,000 (later reduced to $100,000). The condemnor refused the counter-offers and instituted condemnation proceedings. On appeal, the condemnees argued that the trial court erred in finding that there had been a bona fide effort to purchase in that the condemnor had refused to negotiate upward from the $40,000 figure. The following language in the *Murray* opinion is pertinent to the case at bar:

> "We do not agree with appellants' contention in this regard. We do not construe the language [of the statute pertaining to negotiations] to mean that the condemning authorities must first make an offer of a figure below that which they believe to be the maximum they could justify paying for the property, then through a series of negotiations bargain with the property owner until some figure within what the Commission might consider to be reasonable was agreed upon. In fact, it appears to be much more honest and forthright on the part of the condemning authority to come forth in their initial offer with the highest price they feel they could reasonably justify paying for the property. The fact that a property owner might place a higher value on his real estate and attempt to induce the condemning authority to pay a higher price does not bind the condemning authority to raise its figure.

We do not interpret the word 'negotiations' in the statute to mandate a series of encounters of offers and counter-offers in an attempt to arrive at a price. Where as here, the condemning authority has employed professional appraisers and has based its firm offer to purchase on figures presented to it by its appraisers, we hold that such an offer to purchase meets the requirement to negotiate as set out in the statute." 276 N.E. 2d at 522.

We hold that the evidence in the case *sub judice* indicates that the Authority made the requisite bona fide, good faith effort to acquire respondents' property by purchase, and supports the trial court's finding to that effect.

[3] Under their second assignment of error, respondents have attempted to present several distinct questions of law, in violation of App. Rule 10(c); the assignment is a broadside assignment and is subject to being overruled for that reason. However, we elected to deal with respondents' contention relating to the sufficiency of the Authority's attempt to purchase the land; we have also elected to deal with respondents' contention that G.S. 40-10 prohibits the Authority from condemning the land in question because of the presence thereon of one or more dwelling houses.

We reject this latter contention, based upon the reasoning of *Mount Olive v. Cowan*, 235 N.C. 259, 69 S.E. 2d 525 (1952), which held that the limitation of G.S. 40-10 applied only to corporations named in Article 1 of G.S. Chapter 40 and not to a corporation deriving its power to condemn from some other act of the legislature. The Authority derives its power to condemn, as noted at the outset of this opinion, from Chapter 98, Public-Local Laws of 1941 as amended, and is not one of the corporations named in the sections preceding G.S. 40-10.

Respondents' second assignment of error is overruled.

For their third assignment of error, respondents contend that they have been deprived of rights guaranteed them by the United States and North Carolina Constitutions. Respondents attempt to raise, once again, the question of necessity of the taking of their land; having dealt with the question, *supra*, we decline to do so again.

Respondents' contention that the Authority's petition did not comply with the requirements of G.S. 40-12 by stating in detail

the nature of the public business and the specific use for which the land is sought is without merit and warrants no discussion. In our opinion, respondents' third assignment of error fails to raise any questions which require further discussion by this Court.

The decision of the trial court is

Affirmed.

Judges HEDRICK and MITCHELL concur.