IN RE: THE HOUSING AUTHORITY OF THE CITY OF RALEIGH, N.C., LOW-RENT PUBLIC HOUSING PROJECT NC 2-14 v. BEULAH C. MONTGOMERY, PAULINE J. HOLT AND ALL PERSONS HAVING ANY INTEREST IN OR LIEN UPON THE PROPERTY DESCRIBED HEREIN

No. 8110SC879

(Filed 19 January 1982)

1. **Eminent Domain § ·7; Municipal Corporations § 4.6— condemnation by Housing Authority for access street—authority—summary judgment proper**

   Where a Housing Authority sought to purchase respondent's land as part of a series of purchases concerning the building of a low-rent housing project, whether the site petitioner sought to condemn was to be used for the construction of a street or for the construction of drainage and water and sewer lines

was not a material fact in dispute. Unlike respondent contended, under Article 1 of Chapter 157 of the General Statutes of North Carolina, respondent possessed statutory authority to condemn petitioner's property for either purpose.

**2. Eminent Domain § 7.3; Municipal Corporations § 4.6— condemnation proceeding by Housing Authority—good faith negotiations**

There was no failure of good faith negotiations by the Housing Authority under N.C.G.S. § 40-12 where the offer to acquire respondent's property equaled the highest appraisal; respondent never tendered a counter offer; and petitioner encouraged respondent to obtain her own appraisal.

APPEAL by respondent from *Preston, Judge.* Judgment entered 14 April 1981 in Superior Court, WAKE County. Heard in the Court of Appeals 20 November 1981.

In July 1978 the Housing Authority of the City of Raleigh, N.C. (hereinafter referred to as the Housing Authority) purchased approximately seventeen acres of land, in Wake County just north of the northeastern limits of the city of Raleigh. The site was to serve as the location of Project N.C. 2-14, a low-rent housing project of the Housing Authority. It adjoined Sue Ellen Drive on the east, Baugh Street and Oates Drive on the south, and was approximately 300 feet east of U.S. Highway 1.

Prior to its approval of the Project N.C. 2-14 plan, which had to be submitted to the City of Raleigh for subdivision approval, the Housing Authority Board of Commissioners was informed by architects for the project that it would be necessary to secure a right-of-way for a waterline, a sanitary sewer drain, and a storm water drain between the seventeen-acre site and U.S. Highway 1, and that a street between the site and U.S. Highway 1 was necessary to conform to the comprehensive thoroughfare plan of the City of Raleigh. The subdivision plan subsequently approved by the Housing Authority and by the Raleigh City Council included a provision that the right-of-way for the street, which was located on the property of respondents Montgomery and Holt,[1] would be acquired by the Housing Authority.

On 14 April 1980, after completion of the necessary preliminary reports, the Housing Authority sent to Mrs. Montgomery a letter offering to acquire a 0.579-acre parcel of her land

---

1. Pauline J. Holt did not appeal from the judgment of the clerk of superior court, filed 27 February 1981, and is not, therefore, a party to this appeal.

for the sum of $50,600. Included in that letter was a Statement of the Basis for the Determination of Just Compensation. On 29 April, Mrs. Montgomery, through her attorney, responded with a letter seeking additional information concerning the Housing Authority's offer. On 14 August 1980, after additional correspondence between the Housing Authority and Mrs. Montgomery, the Housing Authority sent its final offer to purchase the parcel of land. Receiving no firm response to its offer, the Housing Authority initiated condemnation proceedings by filing a petition for condemnation on 17 October 1980 (amended 20 October 1980), alleging both the authority to exercise the power of eminent domain and the necessity for the land for construction of a low-rent public housing project. The petitioner sought, *inter alia*, a declaration that petitioner could take title to and possession of the property and the appointment of a special master to determine just compensation. Respondent Montgomery answered, denying that the property was being acquired for the housing project and asserting that the true purpose for which the land was being acquired was construction of a public street, an activity beyond the scope of petitioner's authority. Respondent also contended that petitioner had failed to make a reasonable good faith effort to acquire the property by negotiation. Petitioner had denied respondent's request for copies of the reports of the appraisers, thereby denying a basis on which respondent could determine whether petitioner's offer was reasonable. Because of the pendency of an action that respondent, as one of several plaintiffs, had initiated in federal court,[2] respondent sought dismissal of the condemnation proceedings until the issues of the federal case could be determined.

After somewhat extensive discovery and a motion for leave to amend the amended petition for condemnation,[3] the matter was heard before the Clerk of Superior Court of Wake County. The clerk made findings of fact which included the following:

2. Respondent and others, in 79-453-CIV-5, United States District Court for the Eastern District of North Carolina, sued the United States Department of Housing and Urban Development, the Housing Authority, and others, seeking discontinuation of N.C. Project 2-14 because the defendants in that case had failed to comply with the provisions of the National Environmental Policy Act of 1969, 42 U.S.C. §§ 4321-4347.

3. The purpose of the motion for leave to amend was to set forth the legal descriptions of the two separate tracts of respondents Montgomery and Holt.

14. According to the most recent plan for Project N.C. 2-14 prepared by Owen Smith (hereinafter "current plan"), on the property that is described in Paragraph 2 of the Amended Petition there will be installed water lines, sewer drainage, storm water drainage, and a paved street, all of which will be complete between Highway U.S. 1 North and the 17-acre tract described above.

15. According to the current plan the water line across the property that is the subject of this condemnation action would run to a water main located in the right of way of Highway U.S. 1 North.

16. Although water for Project N.C. 2-14 could be obtained by alternative means, the alternative means would provide water at a lower pressure than the current plan and would therefore provide less protection against fire to the housing to be constructed.

17. There is no acceptable alternative to sewer drainage for the sixty (60) units of low-rent housing other than a connection between the 17-acre tract and a main drain for sewage and storm water located in the right of way of Highway U.S. 1 North. The property that is the subject of this condemnation action provides the best means of access for such a sewer connection.

18. There is no alternative means of storm water drainage from the 17-acre tract other than a drain between that tract and a main drain for sewage and storm water located in the right of way of Highway U.S. 1 North. The property that is the subject of this action for condemnation is the best location for such a connecting drain.

19. The City of Raleigh has approved a subdivision plan which includes a requirement that the petitioner acquire the property that is the subject of this condemnation action, construct a paved street connecting Highway U.S. 1 North and the 17-acre tract, and dedicate that street to the public domain.

20. Petitioner employed three expert appraisers to establish the fair market value of the portion of the property that is described in Paragraph 2 of the Amended Petition and

is owned by Beulah C. Montgomery. Petitioner offered to purchase that portion of the property from respondent Montgomery for the greatest estimated fair market value set by any of those appraisers. Petitioner made a good faith attempt over the four-month period following the initial offer to purchase respondent Montgomery's property to determine whether she accepted or refused that offer and to determine whether she was prepared to tender a counter offer. Respondent Montgomery at no time accepted the offer or tendered any counter offer.

After concluding that petitioner could exercise the power of eminent domain and that the acquisition of the subject property was for a public use and was necessary for N.C. Project 2-14, the clerk decreed that petitioner could take title to and possession of the property. The clerk also appointed a special master to hear the question of compensation and to make a report to the court.

Respondent Montgomery appealed the clerk's order to the Superior Court of Wake County. Petitioner and respondent both filed motions for summary judgment. Petitioner's motion was allowed, and the case was remanded for proceedings in accordance with the clerk's order. Respondent has appealed from that ruling.

*Allen, Steed and Allen, by Thomas W. Steed, Jr., William D. Dannelly, and Ann Hogue Pappas, for petitioner appellee.*

*Weaver & Montgomery, by John R. Montgomery and G. Earl Weaver, for respondent appellant.*

MARTIN (Harry C.), Judge.

[1] The respondent presents two questions for our determination. First, she contends that the trial court erred in determining, for summary judgment purposes, that no genuine issue of any material fact existed.

Under Rule 56 of the North Carolina Rules of Civil Procedure, summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." The purpose of summary judgment under this

rule is not to decide an issue of material fact, but to determine whether a genuine issue of material fact exists. *Hotel Corp. v. Taylor* and *Fletcher v. Foremans, Inc.*, 301 N.C. 200, 271 S.E. 2d 54 (1980). Properly granted, summary judgment eliminates the necessity of a formal trial where only questions of law are involved and a fatal weakness in the claim or the defense of the respective parties is exposed. *Id.*

According to respondent in the present case, the material fact in dispute was whether the site petitioner sought to condemn was to be used for the construction of a street or for construction of drainage and water and sewer lines. Respondent contends that the determination of this material fact was crucial because the Housing Authority had no power to condemn land for the former purpose and that if this was the proposed use, petitioner's action would be illegal. After reviewing the statutes granting housing authorities the power to condemn property, this Court rejects respondent's premise that the Housing Authority lacked authority to condemn land for the purpose of constucting an access street to Project N.C. 2-14 and concludes that the fact respondent seeks to put in issue was not material to a resolution of the case.

Under the statutory scheme, a housing "authority shall constitute a public body and a body corporate and politic, exercising public powers, and having all the powers necessary or convenient to carry out and effectuate the purposes and provisions" of the Housing Authorities Law, article 1 of chapter 157 of the General Statutes of North Carolina. N.C. Gen. Stat. § 157-9 (1981). These powers include the power "to purchase, lease, obtain options upon, acquire by gift, grant, bequest, devise, or otherwise any property real or personal or any interest therein . . . [and] to acquire by eminent domain any real property, including improvements and fixtures thereon." *Id.* The statutory grant of the power of eminent domain is reinforced by N.C.G.S. 157-11 which reads in pertinent part:

　　　　The authority shall have the right to acquire by eminent domain any real property, including fixtures and improvements, which it may deem necessary to carry out the purposes of this Article after the adoption by it of a resolution declaring that the acquisition of the property described therein is in the public interest and necessary for public use.

The legislature declared that "the clearance, replanning and reconstruction . . . and the providing of safe and sanitary dwelling accommodations for persons of low income are public uses and purposes for which public money may be spent and private property acquired . . .." N.C. Gen. Stat. § 157-2 (1976).

Respondent's argument that petitioner lacked statutory authority to condemn property for purposes of constructing a street defies a sensible interpretation of the clear language of the enabling statute. A housing complex as contemplated here cannot be constructed without providing means of ingress and egress for the people who reside therein. The power to condemn property for a street to connect the housing project with a major thoroughfare, as required by a municipality's thoroughfare plan, is a power necessary to carry out the purposes of the Housing Authorities Law.

Assuming, therefore, that the issue of how the property was to be used was a genuine one, we cannot find that it affected a material fact that would alter the outcome of the court's ruling. Respondent's assignment of error is overruled.

[2] Respondent next contends that the trial court erred in granting petitioner's motion for summary judgment when petitioner had failed prior to the condemnation proceedings to make a good faith effort to acquire the property by private negotiations. Respondent's argument is twofold. First, she contends that petitioner did not abide by the statutory requirement of good faith negotiation. Secondly, respondent contends that petitioner's failure to abide by North Carolina's Public Records act, N.C.G.S. 132-1 to -9, by disclosing its three appraisals amounted to a failure of good faith negotiations by petitioner.

Under N.C.G.S. 40-11, condemnation proceedings can be initiated by the appropriate body politic if the condemnor "is unable to agree for the purchase of any real estate required" for its purposes. A petition instigating such proceedings must allege that the condemnor "has not been able to acquire title [to the real property], and the reason of such inability." N.C. Gen. Stat. § 40-12 (1976). The above-quoted statutes have been interpreted to require a condemnor to "make a bona fide effort to purchase by private negotiation" prior to instituting condemnation proceedings. *Power Co. v. King*, 259 N.C. 219, 220-21, 130 S.E. 2d 318,

320 (1963). *Accord, Airport Authority v. Irvin,* 36 N.C. App. 662, 245 S.E. 2d 390, *appeal dismissed,* 295 N.C. 548 (1978), *cert. denied,* 440 U.S. 912, 59 L.Ed. 2d 460 (1979). In the *Irvin* case, this Court quoted with approval the following language from *Murray v. City of Richmond,* 257 Ind. 548, 276 N.E. 2d 519 (1971):

> We do not construe the language [of the statute pertaining to negotiations] to mean that the condemning authorities must first make an offer of a figure below that which they believe to be the maximum they could justify paying for the property, then through a series of negotiations bargain with the property owner until some figure within what the Commission might consider to be reasonable was agreed upon. In fact, it appears to be much more honest and forthright on the part of the condemning authority to come forth in their initial offer with the highest price they feel they could reasonably justify paying for the property.

36 N.C. App. at 671, 245 S.E. 2d at 395-96.

Applying these principles to the facts of this case, we can find no failure of good faith negotiation by the Housing Authority. The fact that the offer to acquire respondent's property equaled the highest appraisal of the fair market value of that property was undisputed. As far as we can determine from the record, respondent never tendered a counteroffer to petitioner's offer made in at least two letters to respondent. Furthermore, we do not consider petitioner's refusal to reveal the three appraisals of the property as a lack of good faith. Petitioner encouraged respondent to obtain her own appraisals and even went so far as to offer to reveal the total amount of each of its appraisals. We, therefore, reject this portion of respondent's contention that the petitioner failed to negotiate in good faith.

Finally, respondent argues that the Public Records act required the Housing Authority to reveal to her its three appraisals of the property. Under the facts of this proceeding, we are not required to determine whether petitioner violated the terms of the Public Records act. We note the record does not disclose that respondent requested the appraisals after the appeal to superior court. Nor did she request a continuance of the summary judgment hearing in order to pursue further discovery relative to the appraisals, pursuant to N.C.R. Civ. P. 56(f). Assuming, *arguendo,*

that petitioner violated the Public Records act by refusing to disclose the appraisals of respondent's property, that violation may not be used as an affirmative defense in a condemnation proceeding. The proper procedure for compelling petitioner to turn over documents allegedly covered by the Public Records act would have been by proceedings pursuant to N.C.G.S. 132-9.

The summary judgment from which respondent brought this appeal is

Affirmed.

Judges ARNOLD and WELLS concur.