Time Warner Entm't Advance/Newhouse P'ship v. Town of Landis, 2011 NCBC 19.

| | |
|---|---|
| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| ROWAN COUNTY | SUPERIOR COURT DIVISION |
| | 10 CVS 1172 |

TIME WARNER ENTERTAINMENT
ADVANCE/NEWHOUSE
PARTNERSHIP,

        Plaintiff,

  v.

TOWN OF LANDIS, NORTH
CAROLINA,

        Defendant.

**ORDER & OPINION**

*Brooks, Pierce, McLendon, Humphrey & Leonard, LLP by Reid L. Phillips; Hogan Lovells, LLP by Gardner F. Gillespie and Paul A. Werner, III for Plaintiff.*

*Poyner & Spruill, LLP by David M. Barnes and Andrew H. Erteschik for Defendant.*

*Joseph W. Eason for the North Carolina Association of Electric Cooperatives,* Amicus Curiae.

Murphy, Judge.

{1}    The Court heard this matter on February 17, 2011, on the Motion of Defendant Town of Landis, North Carolina (the "Town"), for partial summary judgment pursuant to Rule 56 of the North Carolina Rules of Civil Procedure.

{2}    The Town moved for summary judgment on Plaintiff Time Warner Entertainment Advance/Newhouse Partnership's ("TWEAN") First Claim for Relief for "refusal to negotiate" and Second Claim for Relief for "violation of nondiscrimination requirement."

{3} After considering the Complaint, the briefs and submissions of the parties, and the arguments of counsel at the February 17, 2011 hearing, the Court agrees with Defendant that there is no disputed issue of material fact relating to Plaintiff's First Claim for Relief for "refusal to negotiate" as required under Section 62-350 of the North Carolina General Statutes and Defendant is entitled to summary judgment as a matter of law as to this claim only. Accordingly, Defendant's Motion for Partial Summary Judgment as to Plaintiff's First Claim for Relief is **GRANTED**. Plaintiff's First Claim for Relief for "refusal to negotiate" is, therefore, **DISMISSED**.

{4} The Court further concludes that there exists a disputed issue of material fact as to whether Plaintiff violated the nondiscrimination requirement of Section 62-350 of the North Carolina General Statutes. Accordingly, Defendant's Motion for Partial Summary Judgment as to Plaintiff's Second Claim for Relief is **DENIED**.

## I.

## FACTS

{5} Plaintiff TWEAN is a New York general partnership with its principal place of business in New York, New York. TWEAN is a cable system operator that provides internet, television and telephone services via cables attached to utility poles owned by the Town, a municipal corporation, pursuant to a pole attachment agreement under which the parties operated. Pursuant to this agreement, from

1979 to 2009, the Town permitted TWEAN to attach its cables to the Town's utility poles at the original rate of $3.00 per pole.

{6}     Effective July 10, 2009, the North Carolina General Assembly enacted Section 62-350 of the North Carolina General Statutes (the "Act") which provides that "a municipality . . . that owns or controls poles, ducts, and conduits shall allow any communications service provider to utilize its poles, ducts, and conduits at just, reasonable, and nondiscriminatory rates, terms and conditions adopted pursuant to negotiated or adjudicated agreements." N.C. Gen. Stat. § 62-350(a) (2010).

{7}     The Act further provides a mechanism for resolving disputes between communication service providers and municipal utilities over the use of poles, ducts and conduits. First, the parties are required to negotiate concerning rates, terms and conditions for the use of or attachment to the poles, ducts, or conduits. N.C. Gen. Stat. § 62-350(b) (2010). If they are unable to reach an agreement within a 90-day period or if either party believes in good faith that an impasse has been reached before the expiration of the 90-day period, either party may bring an action in the Business Court and the Court "shall resolve any dispute identified in the pleadings consistent with the public interest and necessity so as to derive just and reasonable rates, terms, and conditions." N.C. Gen. Stat. § 62-350(c) (2010).

{8}     In 2009, the Town proposed a new contract to cover TWEAN's existing and future cable attachments to the Town's poles. The new contract would increase TWEAN's attachment rate from $3.00 per pole, per year, to more than $36.00 per

pole, per year with additional increases built in.  TWEAN objected to the proposed increase.

{9}     After the Town and TWEAN were unable to resolve their differences and reach an agreement regarding reasonable rates, terms and conditions, on April 19, 2010, Plaintiff filed its Notice of Designation and Complaint alleging three separate claims for relief: (1) refusal to negotiate (N.C. Gen. Stat. § 62-350(b)); (2) violation of the non-discrimination requirement (N.C. Gen. Stat. § 62-350(a)); and (3) issues in dispute.  Compl. ¶¶ 34-49.

{10}     In addition to TWEAN, the Town also allows another local exchange carrier – Windstream Communications ("Windstream") – to attach to the Town's poles pursuant to a joint use agreement.  This agreement provides for a reciprocal arrangement wherein the Town attaches to poles owned by Windstream at no charge and Windstream attaches to poles owned by the Town at a rate of $2.00 per pole, per year.

{11}     It is uncontroverted that TWEAN does not own any utility poles within the jurisdiction of the Town and does not have a reciprocal arrangement with the Town for the attachment of cables used to deliver electrical or communication services to the public.

{12}     The Town now seeks summary judgment on TWEAN's claims for "refusal to negotiate" and "violation of the Act's nondiscrimination requirement." The Town concedes that the third claim "issues in dispute" is ripe for determination

by the Court at trial and is not included in its Motion for Partial Summary Judgment.

{13}    Included in the Town's Motion for Partial Summary Judgment were allegations supported by attached discovery documents, including deposition testimony, that summarized the contacts, communications and efforts at negotiations between the Town, its representatives, and TWEAN and its representatives.  TWEAN presented no documentary or testimonial evidence to contradict the contents of those documents and the Court considers the contents to be uncontroverted.  The Court adopts many of those allegations and sets out salient portions below that support the Court's determination of these issues.

{14}    On August 3, 2009, the Town's Administrator, Douglas R. Linn ("Linn"), wrote to TWEAN's representative, Nestor M. Martin ("Martin"), regarding a new pole attachment contract for 2010.  *See* Def.'s Mot. Summ. J. Ex. A.  The letter enclosed a new proposed contract for TWEAN, and asked that any comments be directed to the Town's consultant, McGavran Engineering, P.C.  *Id.*  The letter further advised that McGavran Engineering had completed a pole attachment survey and offered to provide TWEAN with the results of that survey.  *Id.* The letter also referenced new state legislation regulating pole attachments and stated that "we need to discuss this very soon," and "we look forward to hearing from you on this matter." *Id.*

{15}    On August 24, 2009, Martin wrote back to Linn on behalf of TWEAN. Def.'s Mot. Summ. J. Ex. B.  Martin indicated that TWEAN had not yet received the

pole attachment survey results from McGavran Engineering, and that it wanted to review those results before responding to the August 3, 2009 letter. *Id.*

{16}  On August 27, 2009, Edward McGavran, III ("McGavran") of McGavran Engineering wrote to TWEAN, providing TWEAN with "the complete inventory/audit results for The Town." Def.'s Mot. Summ. J. Ex. C.  The letter explained that TWEAN had more attachments on the Town's poles than was authorized, and that the Town would be charging TWEAN for "back rent" under the then-existing 1979 rental rate. *Id.*  The letter further explained that the Town would take TWEAN's National Electrical Safety Code ("NESC") violations "very seriously as a risk management problem," but that the Town "will work with [TWEAN] on getting these violations cleaned up, knowing they did not show up there overnight." *Id.*  The letter concluded by stating that TWEAN should let McGavran know if it had any questions, and that he would answer them "as soon and as accurately as [he] can." *Id.*

{17}  On August 31, 2009, TWEAN responded to the Town's August 3, 2009 letter. Def.'s Mot. Summ. J. Ex. D.  In the first full paragraph of the letter, Martin made reference to the newly-enacted provisions of Chapter 62 of the North Carolina General Statutes, indicating that either party had the right "to take the matter to the Business Court for resolution" if they were unable to agree on rates, terms and conditions within 90 days. *Id.*  Martin specifically requested that Linn "treat this letter as a request under Section 62-55(b) to negotiate a new pole agreement, to include a just, reasonable and non-discriminatory rate." *Id.*  He also stated that

TWEAN expected to have a redlined copy of the Town's proposed pole attachment agreement ready for review shortly and requested the Town to complete an attached questionnaire and provide TWEAN with the Town's most recent annual financial statements related to its electric service. *Id.* TWEAN further indicated that it would use this information to formulate a proposal regarding a reasonable attachment rate. *Id.* The letter pointed out that McGavran Engineering's pole attachment audit did not include any specifics as to which of TWEAN's cable attachments on the Town's poles were in violation of their agreement. *Id.* The letter concluded by reminding the Town that the parties would "have an opportunity to seek the assistance of the North Carolina Business Court if [they were] unable to negotiate a mutually satisfactory agreement." *Id.*

{18} On September 10, 2009, TWEAN sent the Town a redlined copy of the Town's proposed pole attachment agreement. Def.'s Mot. Summ. J. Ex. E. Despite the Town's instruction that TWEAN deal directly with its consultant, McGavran, TWEAN directed the redlined proposed agreement to Linn, the Town Administrator, and did not copy McGavran. *Id.*

{19} TWEAN scheduled a face-to-face meeting on September 21, 2009 with representatives of the Town concerning the proposed pole attachment agreement. *See* Def.'s Mot. Summ. J. Ex. F, Tanck Dep. 21, Sept. 17, 2010. The Town was represented by Linn and McGavran, and TWEAN was represented by its Director of Government Relations for the Charlotte Region, Michael Tanck. *Id.* The meeting

lasted approximately 45 minutes and consisted primarily of discussions concerning the pole attachment agreement. *Id.* at 26:7-10.

{20} Following the face-to-face meeting between the Town and TWEAN, Tanck sent a letter on September 22, 2009 to the Town thanking the Town for the time it took for the meeting. Def.'s Mot. Summ. J. Ex. G.

{21} On October 12, 2009, McGavran e-mailed Martin asking for a copy of the redlined agreement, and again reminded Martin that "we will be handling this issue for the Town." Def.'s Mot. Summ. J. Ex. H.

{22} Four days later, Martin responded by providing McGavran a copy of the redlined proposed agreement in *pdf* format. *Id.* Thereafter, McGavran e-mailed Martin to request a Word version of the redlined proposed agreement, which Martin sent to McGavran. *Id.*

{23} On November 12, 2009, Martin e-mailed McGavran to inquire as to whether McGavran had an opportunity to review the redlined proposed agreement. *Id.* That same day, McGavran e-mailed Martin and explained that "we have some very serious concerns regarding those redlines." *Id.* McGavran pointed out that a primary concern was "the attempt by [TWEAN] to limit the [T]own to having only direct employees of the [T]own deal with [TWEAN]." *Id.* McGavran explained that the Town would determine with whom TWEAN dealt on the Town's behalf and further pointed out that there was no legal authority for requiring direct employees to deal with attaching parties. *Id.*

{24}    Martin responded to McGavran's e-mail by stating, "I understand your position on that issue.  We will deal with the Town's suggested revisions in the language when we see them on this and other issues." *Id.*  Martin reiterated his request for cost information because it was "important to our negotiating a reasonable rate." *Id.*

{25}    On November 13, 2009, McGavran responded, "I am fine with most of this and will get back with you.  Making a push with Gastonia and Tideland at the moment so if you could give me some type of response (knowing your schedule is crowded these days). Just give the best you can as soon as you can.  We'll go from there." *Id.*

{26}    On December 4, 2009, Martin e-mailed McGavran regarding the proposed pole attachment redlined agreement and the responses to the pole attachment questionnaire that TWEAN submitted.  Def.'s Mot. Summ. J. Ex.  I.  McGavran responded, "I gave you some comments regarding the contract but will get a few more together for you.  We still await Gastonia and Tideland EMC from you as well." *Id.*

{27}    On January 5, 2010, TWEAN's counsel, Gardner F. Gillespie, sent a letter to Linn stating the following: "[TWEAN] believes an impasse has been reached in its pole attachment license and rate negotiations with the Town of Landis.  In an effort to resolve the outstanding issues in our negotiation of such agreement, [TWEAN] would like to commence mediation subject to the Statewide

Mediated Settlement Conferences in Superior Court Civil Actions, and pursuant to North Carolina Law." Def.'s Mot. Summ. J. Ex. J.

{28}   The Town did not respond directly to TWEAN's January 5, 2010 letter, but e-mailed TWEAN its "Landis Attachment Rate Worksheets A & B" on February 26, 2010, which contained detailed information from McGavran Engineering regarding the inputs used to determine the pole attachment rate, as well as financial information from the Town. Def.'s Mot. Summ. J. Ex. K.

{29}   In a letter dated March 4, 2010, Martin wrote to Linn noting that the Landis Attachment Rate Worksheets "lacked key information" requested by TWEAN concerning the "net cost" of the Town's poles, and that the Town failed to provide the annual financial statements related to its electrical service. Def.'s Mot. Summ. J. Ex. L. Martin claimed that TWEAN needed this information to determine what might be a just and reasonable pole attachment rate. *Id.*

{30}   In his deposition testimony on September 16, 2010, Martin made clear that there were two main differences between the agreement proposed by the Town and the redlined agreement proposed by TWEAN: (1) the definition of "attachment"; and (2) TWEAN proposed to negotiate the rates through a course of negotiations as opposed to accepting the rates that were outlined in the initial contract. Def.'s Mot. Summ. J. Ex. M, Martin Dep. 148: 1-9, Sept. 16, 2010. Martin acknowledged, however, that TWEAN never proposed to the Town an alternative rate. *Id.* at 148:10-11.

{31}    On January 21, 2010, TWEAN, in internal documents, began referring to the "Landis complaint" and as early as February 17, 2010 drafted a complaint "re TWEAN v. Town of Landis."  Def.'s Mot. Summ. J. Ex. T.

{32}    On March 31, 2010, Martin executed the Verification for the Complaint that was filed by TWEAN on April 19, 2010. *See* Def.'s Mot. Summ. J. Ex. N.

## II.

## LEGAL STANDARD

{33}    A trial court must grant summary judgment "when there is no genuine issue as to any material fact and any party is entitled to a judgment as a matter of law. *Wal-Mart Stores East, Inc. v. Hinton*, 197 N.C. App. 30, 37, 676 S.E.2d 634, 641 (2009).  "Summary judgment is appropriate if . . . the facts are not disputed and only a question of law remains . . . ." *Id.*

## III.

## ANALYSIS

### First Claim: Refusal to Negotiate

{34}    In its First Claim for Relief, TWEAN alleges that the Town has violated section 62-350(b) of the North Carolina General Statutes "by refusing to negotiate the rate, terms, and conditions of a proposed pole attachment agreement." Compl. ¶ 36.

{35}    As the parties agree on the material facts of the dispute regarding the First Claim for "refusal to negotiate," and disagree only as to what constitutes

"negotiation" as a matter of law, a partial summary disposition of the claim is proper and appropriate.

{36}   This is the first case arising under Section 62-350 of the North Carolina General Statutes for a court to consider what constitutes a "refusal to negotiate" concerning the rates, terms, and conditions for the continued use of or attachment to poles or conduits owned or controlled by one of the parties to an attachment agreement.

{37}   Although no North Carolina court has ever addressed the issue in the context of this statute, the North Carolina Supreme Court has considered the question of refusal to negotiate in good faith in the context of a condemnation proceeding. *See Kings Mountain v. Cline*, 281 N.C. 269, 188 S.E.2d 284 (1972).

{38}   In that case, Kings Mountain (the "City") sought to purchase the defendants' real property in order to construct a municipal reservoir. *Id.* The City had the defendants' land appraised and subsequently made the defendants an offer to purchase the land for $44,562.60. *Id.* Defendants refused the City's offer to purchase a fee interest in the land and responded that the defendants would only grant the City an easement over the land. *Id.* The parties' disagreement over the type of interest to be conveyed thwarted further negotiation. *Id.* The City made the defendants a firm offer of $44,562.60 for the land in fee, which the defendants again refused. *Id.* Thereafter, the City initiated condemnation proceedings and the Superior Court held that the City was "entitled to acquire in fee the land described in the petition for such sum of money to be determined and assessed by a jury." *Id.*

The defendants appealed claiming that the condemnation proceeding should have been dismissed because the City failed to negotiate in good faith before instituting it. *Id.* The Supreme Court affirmed the decision and concluded that the evidence in the record supported the trial court's findings and that the findings supported each judgment. *Id.* at 274, 188 S.E.2d at 287.

{39}    This Court is not persuaded, however, by the holding or dicta in *Cline* as that court did not squarely address what constitutes "good faith negotiation" as a matter of law. The court merely held that, upon the evidence presented, the Superior Court made findings that supported the order entered. *Id.*

{40}    Given the absence of case law dealing squarely with the issue discussed herein, the Court has turned to the area of contract law, specifically agreements to negotiate, for direction.

{41}    In construing the meaning of applicable terms used in a statute, the Court applies a "plain meaning" standard. "Statutes should be read and understood according to the natural and most obvious import of the language without resorting to subtle and forced construction for the purpose of either limiting or extending their operation." *Nance v. Southern Ry.*, 149 N.C. 366, 372, 63 S.E. 116, 118-19 (1908).

{42}    "Negotiation" as defined in Black's Law Dictionary is "a consensual bargaining process in which the parties attempt to reach an agreement on a disputed or potentially disputed matter." Black's Law Dictionary 1064 (8th ed. 2004).

{43}    This Court has been unable to find any legal authority to support the proposition that the duty to negotiate imposes an obligation on a party to actually reach an agreement, and concludes as a matter of law that no such duty exists within this jurisdiction.

{44}    Ordinarily when parties to an agreement undertake to negotiate, they implicitly do so under a general obligation of fair dealings with each other. Although Section 62-350(b) of the North Carolina General Statutes imposes an affirmative duty upon a municipality to "negotiate concerning the rates, terms, and conditions for the use of or attachment to poles…," the statute does not contain express language that such negotiation must be "in good faith," nor does it expressly impose an obligation of "fair dealing."  An obligation to negotiate, however, absent an attending duty to do so "in good faith," would render the obligation meaningless.

{45}    "Good faith" is defined in Black's Law Dictionary as "a state of mind consisting in (1) honesty in belief or purpose, (2) faithfulness to one's duty or obligation, (3) observance of reasonable commercial standards of fair dealing in a given trade or business, or (4) absence of intent to defraud or to seek unconscionable advantage."  Black's Law Dictionary 713 (8th ed. 2004).

{46}    For the purpose of resolving the issue presented herein, the Court makes no distinction in meaning between the terms "good faith" and "fair dealing."

{47}    In determining whether the Town refused to negotiate (in good faith) with TWEAN, the Court looks to the behavior of the Town vis-à-vis TWEAN and the circumstances surrounding the course of their interactions.

{48}     A leading authority on Contract law, E. Allan Farnsworth, directs courts to look for "subtler manifestations [of bad faith] in contract negotiations, such as refusing to disclose information relevant to the negotiations, rejecting routine provisions, shifting bargaining positions when agreement is near, engaging in dilatory tactics, or withholding agreement on trivial matters."  See, E. Allan Farnsworth, Farnsworth on Contracts § 3.26(c) (3d ed. 2004).

{49}     Farnsworth outlines seven practices that may constitute bad faith in contract negotiations: (1) refusal to negotiate; (2) improper tactics; (3) unreasonable proposals; (4) non-disclosure; (5) negotiations with others; (6) reneging; and (7) breaking off negotiations.  *Id.* at § 3.26(c).

{50}     The absence or presence of one or more of these practices by the Town herein is instructive to the Court in determining whether the Town negotiated in good faith with TWEAN.

{51}     TWEAN asserts that the Town gave it an ultimatum (take-it-or-leave-it offer) and cites case law from other jurisdictions that seems to suggest that such a position does not constitute good-faith negotiation.  *See* Pl's Br. in Opp'n. to Def.'s Mot. Summ. J. 14-16.  In the context of the cases Plaintiff presents in its brief, the Court might be persuaded by Plaintiff's argument if the facts of this particular case supported such a simplistic view.  This Court is, however, unconvinced by Plaintiff's arguments.

{52}     The North Carolina Court of Appeals addressed the question of whether a condemning authority negotiated in good faith, as required by statute, in

a condemnation proceeding. *See Greensboro-High Point Airport, Auth. v. Irvin*, 36 N.C. App. 662, 245 S.E.2d 390 (1978). The Court of Appeals found the following language from an opinion by the Supreme Court of Indiana to be pertinent:

> We do not construe the language [of the statute pertaining to negotiations] to mean that the condemning authorities must first make an offer of a figure below that which they believe to be the maximum they could justify paying for the property, then through a series of negotiations bargain with the property owner until some figure within what the Commission might consider to be reasonable was agreed upon. In fact, it appears to be much more honest and forthright on the part of the condemning authority to come forth in their initial offer with the highest price they feel they could reasonably justify paying for the property. The fact that a property owner might place a higher value on his real estate and attempt to induce the condemning authority to pay a higher price does not bind the condemning authority to raise its figure.

*Id.* at 671, 245 S.E.2d at 395-96 (citing *Murray v. City of Richmond*, 276 N.E.2d 519, 522 (Ind. 1971)).

{53} The facts of this case clearly demonstrate that during the course of several months TWEAN discussed the terms of a new agreement with the Town; the parties met face-to-face to facilitate further discussions; TWEAN sent to the Town a redlined version of the proposed pole attachment agreement; and the Town provided to TWEAN some information about the pole attachment rates and some of its financial information. It appears that TWEAN, after months of discussion with the Town and its representatives, believed that an impasse had been reached in its pole attachment license and rate negotiations with the Town and confirmed that belief in a letter from TWEAN's legal counsel to Plaintiff's Town Administrator.

{54} There is no credible evidence before the Court that the Town, or any of its representatives, acted in bad faith, *i.e.*, engaged in improper tactics, offered unreasonable proposals to TWEAN, failed to disclose relevant information that was critical to the continuation of negotiations, reneged on any representations to TWEAN, or abruptly broke off negotiations.

{55} Section 62-350(c) of the North Carolina General Statutes makes clear that either party to an attachment agreement has the option of bringing an action in Business Court if either party believes in good faith that an impasse has been reached.

{56} The parties deliberated, discussed and conferred both in writing and in person in an attempt to reach an agreement. It was TWEAN who represented that an impasse had been reached and communicated the same in writing to the Town. At that point, either party had the right to exercise its option of bringing an action in Business Court to resolve their differences.

{57} Upon the particular facts of this case, the Court concludes as a matter of law that the Town did not refuse to negotiate with TWEAN; that, in fact, the Town negotiated in good faith with TWEAN in attempting to reach an agreement.

{58} Therefore, the Court **GRANTS** summary judgment in favor of the Town on Plaintiff's First Claim for Relief for "refusal to negotiate."

### Second Claim: Violation of Nondiscrimination Provision

{59}    In its Second Claim for Relief, TWEAN alleges that the Town "has permitted attachments to its utility poles on terms and conditions more favorable than the terms proposed to Plaintiff." Compl. ¶ 40.

{60}    It is axiomatic that a plaintiff be "similarly situated" with the entity that the plaintiff contends has received favorable treatment in order to prove a violation of the nondiscrimination requirement of section 62-350(a) of the North Carolina General Statutes. *See State ex rel. Util. Comm'n v. Tidewater Natural Gas Co.*, 259 N.C. 558, 565, 131 S.E.2d 303, 308 (1963).

{61}    It is undisputed that the only other entity besides TWEAN that the Town allows to attach to its poles is Windstream.

{62}    Whether Windstream and TWEAN are similarly situated for purposes of addressing the nondiscrimination provision of the Act involves a question of fact and not of law.

{63}    The parties are clearly in dispute regarding the facts related to this issue. As such, summary judgment is not appropriate.

{64}    Therefore, the Court **DENIES** summary judgment on Plaintiff's Second Claim for Relief for "violation of the nondiscrimination requirement."

## IV.

## CONCLUSION

{65}    Based upon the foregoing findings of fact, the Court concludes as a matter of law that there exists no genuine issue as to any material fact regarding

the Plaintiff's First Claim for Relief for "refusal to negotiate" and Defendant is entitled to summary judgment as a matter of law as to this claim only.

{66} It is, therefore, **ORDERED** that Defendant's Motion for Partial Summary Judgment is **GRANTED** as to the First Claim for Relief and **DENIED** as to the Second Claim for Relief. Plaintiff's First Claim for Relief for "refusal to negotiate" is, therefore, **DISMISSED**.

This the 30th day of June, 2011.