CITY OF HOLYOKE, a municipal corporation for the State of Colorado, Petitioner–Appellee,

v.

SCHLACHTER FARMS R.L.L.P., Respondent–Appellant.

No. 00CA0300.

Colorado Court of Appeals, Div. I.

March 15, 2001.

Gorsuch Kirgis, L.L.P., Malcolm M. Murray, Denver, CO, for Petitioner–Appellee.

Peterson, Dymond, Reagor, L.L.P., David D. Schlachter, Heather F. Shore, Denver, CO, for Respondent–Appellant.

Opinion by Judge DAILEY.

Respondent, Schlachter Farms R.L.L.P. (Schlachter Farms), appeals the trial court's order denying attorney fees following an eminent domain proceeding brought by petitioner, the City of Holyoke (City). We affirm.

The City needed 63.54 acres of Schlachter Farms' land in order to expand its municipal airport. Based on an appraisal, the City offered to pay $51,354 for the land. Schlachter Farms countered with an offer of $133,589, which was not supported by an appraisal.

The City and Schlachter Farms entered into a Possession and Use Agreement, under which the City received immediate possession of the land and the parties agreed to continue negotiating a purchase price. Under the terms of the Agreement, if a purchase price was not agreed upon within 60 days, the City was either to begin condemnation proceedings or abandon the condemnation process and return the land to Schlachter Farms.

The parties met to negotiate a purchase price approximately a month after the Agreement was executed. The City reiterated its offer of $51,354. Schlachter Farms, in turn, reiterated its counteroffer of $133,589, then supported by a report from an appraiser indicating a best use of the property different from that envisioned by the City's appraiser. The City did not raise its initial offer, and the parties failed to agree on a purchase price. The City then initiated this condemnation proceeding.

Two months later, Schlachter Farms furnished an appraisal valuing the property at $100,400.

After a two-day hearing, the commissioners determined that the fair market value of the required land was $67,000. Consequently, the trial court entered judgment for Schlachter Farms in that amount.

Schlachter Farms subsequently sought reimbursement for its costs and attorney fees. According to Schlachter Farms, the expensive condemnation process could have been avoided had the City been willing to negotiate a reasonable compromise between the parties' offers, but instead, the City had steadfastly refused to offer more than $51,354.

The trial court ordered the City to reimburse Schlachter Farms $16,409.08 in costs. However, the court rejected Schlachter Farms' request for an award of $30,275 in attorney fees, and Schlachter Farms now appeals.

■ Colorado adheres to the American Rule, under which each party is ordinarily responsible for paying its own attorney fees. However, this rule is subject to several exceptions, such as where attorney fees awards are explicitly authorized by statute, contract, or rule. *Morris v. Askeland Enterprises, Inc.,* 17 P.3d 830 (Colo.App.2000).

On appeal, Schlachter Farms argues that an award of its attorney fees is authorized by the "just compensation" clause of Colo. Const. art. II, § 15; by § 38–1–122, C.R.S. 2000; by § 13–17–101, et seq., C.R.S.2000; or by equitable principles. We disagree.

## I. Just Compensation Clause

Article II, § 15 of the Colorado Constitution guarantees that "[p]rivate property shall not be taken ... without just compensation."

■ Schlachter Farms contends that the "just compensation" guarantee mandates an award of attorney fees in eminent domain cases. Otherwise, it argues, a landowner is required to choose between accepting an offer that he or she believes is less than the fair market value, or effectively reducing his or her ultimate compensation by incurring attorney fees in challenging the offer.

The supreme court has determined that the state constitution's "just compensation" clause requires payment to a landowner of the "class of expenses usually taxed as costs." However, the court has expressly held that "[a]ttorneys' fees do not fall within that category." *Leadville Water Co. v. Parkville Water District,* 164 Colo. 362, 365, 436 P.2d 659, 660 (1967). *See also United States v. Bodcaw Co.,* 440 U.S. 202, 99 S.Ct. 1066, 59 L.Ed.2d 257 (1979)(neither costs nor attorney fees are mandated by the federal constitution's Fifth Amendment "just compensation" clause).

Consequently, the supreme court concluded that attorney fees were not awardable in an eminent domain proceeding "[i]n the absence of a statute expressly [so] providing." *Leadville Water Co. v. Parkville Water District, supra,* 164 Colo. at 365, 436 P.2d at 660; *accord Department of Health v. Hecla Mining Co.,* 781 P.2d 122, 128 (Colo.App.1989).

We reject Schlachter Farms' request that we reconsider the supreme court's interpretation of the Colorado Constitution. We are not persuaded that the supreme court would depart from its decision in *Leadville Water Co. v. Parkville Water District, supra,* in light of the General Assembly's subsequent enactment of § 38–1–122. Consequently, that decision is binding upon us. *See Denver Urban Renewal Authority v. Hayutin,* 40 Colo.App. 559, 583 P.2d 296 (1978).

## II. § 38–1–122

Schlachter Farms argues that an award of attorney fees is authorized pursuant to § 38–1–122. Again, we are not persuaded.

Section 38–1–122 provides:

(1) If the court finds that a petitioner is not authorized by law to acquire real property or interests therein sought in a condemnation proceeding, it shall award reasonable attorney fees, in addition to any other costs assessed, to the property owner who participated in the proceedings.

(2) Nothing in subsection (1) of this section shall be construed as limiting the ability of a property owner to recover just compensation, including attorneys fees as may otherwise be authorized by law.

■ Because Schlachter Farms does not dispute the City's authority to condemn its property, it does not allege that subsection (1) is applicable here. It does, however, argue that subsection (2) authorizes awards of attorney fees where condemning authorities fail to negotiate purchase prices in good faith.

In *Department of Health v. Hecla Mining Co., supra,* a division of this court held that § 38–1–122(2) permits recovery of attorney fees only if *another* statute expressly authorizes such recovery. We agree with that holding and, finding Schlachter Farms' reliance on legislative history unpersuasive, consider it dispositive of Schlachter Farms' contention.

Schlachter Farms points to no statute other than § 13–17–101, et seq., as a basis for recovering its attorney fees.

## III. § 13–17–101, et seq.

■ Schlachter Farms contends that the trial court erred in denying an award of attorney fees under § 13–17–101, et seq. Again, we disagree.

Section 13–17–101 authorizes an award of attorney fees "when the bringing or defense of an action ... is determined to have been substantially frivolous, substantially groundless, or substantially vexatious."

■ A party seeking attorney fees bears the burden of proving, by a preponderance of the evidence, its entitlement to an award under § 13–17–101, et seq. *American Water Development, Inc. v. City of Alamosa,* 874

P.2d 352 (Colo.1994). Ultimately, whether to award attorney fees under § 13–17–101, et seq. is a matter committed to the discretion of the trial court. *Wilcox v. Clark,* —— P.3d ——, 2000 WL 1732396 (Colo.App. No. 99CA0994, November 24, 2000).

■ Schlachter Farms contends the City's actions were substantially vexatious. "A vexatious claim is one brought or maintained in bad faith to annoy or harass. It may include conduct that is arbitrary, abusive, stubbornly litigious, or disrespectful of truth." *Bockar v. Patterson,* 899 P.2d 233, 235 (Colo.App. 1994).

According to Schlachter Farms, the City acted in bad faith and in a vexatious manner as a matter of law by refusing to negotiate a purchase price in good faith. The City, it says, was obliged to present additional offers once it (Schlachter Farms) had presented its counteroffer.

■ Good faith negotiations are a jurisdictional prerequisite to the initiation of condemnation proceedings. *See* § 38–1–102(1), C.R.S.2000 (eminent domain proceedings may be instituted where, among other things, compensation for the required property "cannot be agreed upon by the parties interested"); § 38–1–121(3), C.R.S.2000 (noting "the obligation of the condemning authority to negotiate in good faith ... prior to instituting eminent domain proceedings").

■ In Colorado, the good faith negotiation requirement is satisfied where the condemning authority makes a reasonable good faith offer to reach an agreement with the owner of the property and allows the owner sufficient time to respond. "Lengthy or face-to-face negotiations are not required." *Thornton v. Farmers Reservoir & Irrigation Co.,* 194 Colo. 526, 539, 575 P.2d 382, 392 (1978)(construing § 38–1–102); *Board of County Commissioners v. Blosser,* 844 P.2d 1237 (Colo.App.1992)(construing § 38–1–121).

To date, Colorado appellate court decisions have addressed the good faith negotiation requirement only where a landowner has either rejected or not responded to the initial offer of a condemning authority. These decisions have not addressed the issue where, as here, the landowner has accompanied the rejection of the condemning authority's offer with a counteroffer.

In *Murray v. City of Richmond,* 257 Ind. 548, 276 N.E.2d 519 (1971), the Indiana Supreme Court considered whether there had been adequate negotiations prior to the initiation of condemnation proceedings where the city offered to purchase certain property for $40,000, the landowner counteroffered in the amount of $500,000, the city informed the landowner it would not go any higher than $40,000, and the landowner reduced its counteroffer to $100,000, which the city declined.

The Indiana Supreme Court noted that "[t]he fact that a property owner might place a higher value on his real estate and attempt to induce the condemning authority to pay a higher price does not bind the condemning authority to raise its figure." Consequently, the court did not interpret the statutory term "negotiations" to "mandate a series of encounters of offers and counter-offers in an attempt to arrive at a price." It found the statutory negotiation requirement satisfied "[w]here, as here, the condemning authority has employed professional appraisers and has based its firm offer to purchase on figures presented to it by its appraisers." *Murray v.. City of Richmond, supra,* 257 Ind. at 553, 276 N.E.2d at 522. *Accord Greensboro–High Point Airport Authority v. Irvin,* 36 N.C.App. 662, 245 S.E.2d 390 (1978). *See also State v. Hipp,* 832 S.W.2d 71 (Tex.App.1992)(state's practice of making only one bona fide offer of compensation satisfied the "unable to agree" jurisdictional requirement for Texas condemnation proceedings), *rev'd on other grounds sub. nom. State v. Dowd,* 867 S.W.2d 781 (Tex.1993).

Because we agree with the rationale and conclusions reached in these cases, we reject Schlachter Farms' argument that good faith negotiations necessarily require a condemning authority to increase its offer whenever the land owner makes a counteroffer.

Here, the trial court was unable to conclude that the City had not negotiated in good faith. And, based on the foregoing authorities and the circumstances of the case—where the City made an offer, based on an appraisal; where Schlachter Farms

made a counteroffer, without benefit of an appraisal; and where the property was ultimately valued at a figure somewhat higher than the City's offer, but substantially lower than either of Schlachter Farms' counteroffers—we conclude that the trial court did not abuse its discretion in making this determination. Thus, because Schlachter Farms failed to show bad faith and vexatious conduct on the part of the City, it was not entitled to an award of fees under § 13–17–101, et seq.

## IV. Equity

Finally, we reject Schlachter Farms' argument that equity provides a basis for relief here. To date, Colorado has not recognized an equitable exception to the American Rule, *see Bunnett v. Smallwood*, 793 P.2d 157 (Colo.1990)(rejecting equitable arguments even for prevailing parties to recover attorney fees); *Rhodes v. Copic Insur-* *ance Co.*, 819 P.2d 1060 (Colo.App. 1991)(same), and the creation of such exception is a matter more suited to the legislature than to the courts. *See Bernhard v. Farmers Insurance Exchange*, 915 P.2d 1285 (Colo.1996). This is particularly so because the supreme court has already indicated that explicit statutory authority is necessary for fee awards in the eminent domain context. *See Leadville Water Co. v. Parkville Water District, supra.*

Accordingly, the trial court's order is affirmed.

RULAND and VOGT, JJ., concur.