TOWN OF FOXFIELD, Colorado, Plaintiff and Counterclaim Defendant–Appellee and Cross–Appellant,

v.

The ARCHDIOCESE OF DENVER, Defendant and Counterclaim Plaintiff–Appellant and Cross–Appellee,

and

Monsignor Edward L. Buelt, Defendant and Counterclaim Plaintiff–Appellant,

and

United States Department of Justice, Intervenor.

No. 05CA0202.

Colorado Court of Appeals, Div. I.

Aug. 10, 2006.

Certiorari Granted Dec. 18, 2006.

Senter Goldfarb & Rice, L.L.C., Thomas S. Rice, Sonja S. McKenzie, Benjamin P. Eckhart, Denver, Colorado, for Plaintiff and Counterclaim Defendant–Appellee and Cross–Appellant.

Rothgerber Johnson & Lyons, LLP, Charles Goldberg, Eric V. Hall, Denver, Colorado, for Defendant and Counterclaim Plaintiff–Appellant and Cross–Appellee and Defendant and Counterclaim Plaintiff–Appellant.

Thomas N. Scheffel & Associates, P.C., Thomas N. Scheffel, Bradley S. Abramson, Denver, Colorado; Anthony R. Picarello, Jr., Derek L. Gaubatz, Washington, DC, for Amici Curiae The Becket Fund for Religious Liberty, The American Center for Law and Justice, The Association of Christian Schools International, The General Conference of Seventh–Day Adventists, Liberty Counsel, The National Council of the Churches of Christ in the USA, The Queens Federation of Churches, Inc., The Soka Gakkai International—USA, Church of Jesus Christ of Latter Day Saints, National Association of Evangelicals.

Opinion by Judge GRAHAM.

This appeal concerns the applicability of the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc, et seq.; the applicability of the Freedom to Gather to Worship Act (FGWA), § 29–11–201, et seq., C.R.S.2005; and the constitutionality of a municipal ordinance restricting parking that may affect church property. The Archdiocese of Denver and Monsignor Edward L. Buelt appeal from the trial court's summary judgment upholding the ordinance adopted by the Town of Foxfield, Colorado. Foxfield cross-appeals an order staying enforcement of the ordinance. We reverse the judgment, remand for further proceedings, and dismiss the cross-appeal as moot.

The temporary rectory and home of Buelt is located in a residential area on South Salida Street in Foxfield on a two and one-half acre lot. The rectory is used to conduct a variety of religious activities, including housing, religious instruction, and gathering of parishioners. There is a small unattached building on the rectory's property that serves as a chapel. There is also a parking lot situated on the property behind the rectory, which is capable of parking fifteen to twenty vehicles. The closest bus stop to the rectory is approximately one and one-half miles away.

The rectory is adjacent to a 28.3 acre parish site, which currently holds the parish's sanctuary and some temporary modular buildings. There is a plan to build a permanent rectory on the site in the future.

On March 22, 2001, Foxfield enacted Ordinance No. 3, which forbids parking more than five motor vehicles for more than fifteen minutes on or within one thousand feet of private residential property on more than two occasions during any thirty-day period. By its terms, Ordinance No. 3 "shall only be enforced by [Foxfield] upon receipt of written complaints from at least three (3) persons who reside in no less than three (3) separate households located within one thousand five hundred feet (1,500′) of such residential property."

According to the bill adopting Ordinance No. 3, the ordinance is meant to address the negative effects of "the parking of an excess number of motor vehicles," which results in "disturbance to the peaceful enjoyment of surrounding residents," "creates noise and pollution," "restricts the on-street parking available to other residents of those areas," "is unsightly," and "creates a safety hazard and can block access needed by emergency vehicles." The bill's emergency clause states that Foxfield "hereby finds, determines and declares that this Ordinance is necessary for the immediate preservation of the health, safety and welfare of [Foxfield] because the parking of an excess number of motor vehicles in residential areas in [Foxfield] has become such a problem as to constitute an immediate safety hazard to residents of [Foxfield]."

Following the receipt of three written complaints from neighbors of the rectory, on November 13, 2001, Foxfield filed suit against the Archdiocese to enforce Ordinance No. 3 through declaratory judgment and a permanent injunction. The Archdiocese and Buelt counterclaimed that Ordinance No. 3 violated RLUIPA, FGWA, and their federal constitutional freedoms of religious exercise, speech, association, and assembly.

The parties filed cross motions for summary judgment, and the court held a hearing. In a detailed, written order, the trial court denied the Archdiocese's and Buelt's motion for summary judgment and granted Foxfield's motion for summary judgment. The court concluded that there was no jurisdictional basis to apply the provisions of RLUIPA and that FGWA did not apply to Ordinance No. 3. The court then rejected the Archdiocese's and Buelt's § 1983 claims by applying an intermediate scrutiny test and concluding that the ordinance was constitutional.

The Archdiocese and Buelt filed a motion with the trial court to stay proceedings pending this appeal. After a hearing, the trial court granted the motion to stay over Foxfield's objection.

## I. Standard of Review

We review de novo the trial court's determination of a summary judgment motion. *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66 (Colo.2004). Summary judgment is appropriate when the pleadings and supporting documents demonstrate that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c); *Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.*, 90 P.3d 814 (Colo.2004). The nonmoving party is entitled to the benefit of all favorable inferences that may be drawn from the undisputed facts, and all doubts as to the existence of a triable issue of fact must be resolved against the moving party. *Martini v. Smith*, 42 P.3d 629, 632 (Colo.2002).

## II. RLUIPA Jurisdiction

The Archdiocese and Buelt first contend that the trial court erred when it concluded that RLUIPA was not applicable because the jurisdictional prerequisites of RLUIPA were not satisfied. On appeal, the parties also raise issues regarding whether RLUIPA is constitutional and whether Ordinance No. 3 violates RLUIPA. Because the issue of the constitutionality of RLUIPA was not determined by the trial court, we will not address that issue now. *Cf. City of Colorado Springs v. 2354 Inc.*, 896 P.2d 272, 278 n. 3 (Colo. 1995); *Jones v. Newlon*, 81 Colo. 25, 253 P. 386 (1927) (Campbell, J., dissenting). Accordingly, we will only address whether the jurisdictional prerequisites of RLUIPA were satisfied. We agree that they were.

RLUIPA prohibits a government from substantially burdening a person's religious exercise unless the government demonstrates that the burden "is in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc(a)(1). RLUIPA "shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution." 42 U.S.C. § 2000cc-3(g).

Section 2000cc(a)(2) of RLUIPA enumerates jurisdictional bases that apply the statute to "any case in which"

(B) the substantial burden affects, or removal of that substantial burden would affect, commerce with foreign nations, among the several States, or with Indian tribes, even if the burden results from a rule of general applicability; or

(C) the substantial burden is imposed in the implementation of a land use regulation or system of land use regulations, under which a government makes, or has in place formal or informal procedures or practices that permit the government to make, individualized assessments of the proposed uses for the property involved.

Here, the trial court applied the jurisdictional prongs of RLUIPA and determined that neither conferred subject matter jurisdiction.

First, the trial court reasoned that the presumed substantial burden which Ordinance No. 3 placed on church activities did

not affect interstate commerce, relying upon *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970), and two other federal cases, and concluded that because Ordinance No. 3 was neutral on its face and directed toward legitimate local interests, it should be "upheld unless the burden imposed on ... commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc., supra,* 397 U.S. at 142, 90 S.Ct. at 847. The trial court then held:

> The parking ordinance is a matter of local concern enacted to effectuate a legitimate local public interest. The ordinance, by its terms, seeks to regulate excess vehicles in order to reduce safety hazards and noise and pollution, and to promote aesthetics and preserve the rural nature of the neighborhood. Further, the ordinance applies to all neighborhood residents. The Court further finds that any impact on interstate commerce which did or may result from the burdening of religious exercise caused by the parking ordinance is incidental. The Archdiocese and [Buelt] *have not shown that the burden imposed on interstate commerce is clearly excessive* in relation to the putative local benefits....

(Emphasis added.) Applying *Pike's* balancing test, the trial court reasoned that any impact on interstate commerce created by Ordinance No. 3 was incidental and that regulation of parking was a local concern, the benefits of which outweighed the impact on commerce.

Second, the trial court concluded that, as a matter of law, there were no chances for individualized assessments or case-by-case evaluations of the uses to which the Archdiocese's property could be put. Thus, the trial court deemed the remaining jurisdictional prong of RLUIPA to be inapplicable. We disagree with both conclusions.

### A. Interstate Commerce

In our view, the trial court confused the question of whether the Archdiocese's church activities affected interstate commerce for purposes of invoking the jurisdiction of RLUIPA with the question of whether the ordinance had an improper impact on commerce. The two issues are distinctly different.

Whether or not church activities affect commerce has been reviewed by several courts that have concluded that use of the language "affects commerce" signals Congress' intention to invoke its full authority under the Commerce Clause. *See, e.g., United States v. Grassie,* 237 F.3d 1199 (10th Cir.2001) (applying criminal statutes to individual criminal acts against churches in a single state); *see also Jones v. United States,* 529 U.S. 848, 854, 120 S.Ct. 1904, 1909, 146 L.Ed.2d 902 (2000) (Congress' unqualified use of the phrase "affecting commerce" "signal[s] Congress' intent to invoke its full authority under the Commerce Clause"). In such cases, an activity need have only a de minimis effect on interstate commerce to be covered by federal legislation based on the Commerce Clause. *See United States v. Grassie, supra.*

Whether church activities affect interstate commerce for purposes of invoking RLUIPA jurisdiction is far different from determining whether an ordinance does or does not intrude upon national markets and offend the Commerce Clause. This latter inquiry concerns "dormant Commerce Clause" principles, which were developed to assure that merchants and farmers would have a free market throughout the nation without suffering embargos or tariffs that might develop in an economically balkanized state. *Camps Newfound/Owatonna, Inc. v. Town of Harrison,* 520 U.S. 564, 117 S.Ct. 1590, 137 L.Ed.2d 852 (1997). As Justice Scalia pointed out in his dissent in *Camps Newfound/Owatonna, Inc., supra,* the Commerce Clause was not intended to cut the states off from legislating on all subjects relating to the health, life, and safety of citizens even though legislation might indirectly affect commerce. *See Huron Portland Cement Co. v. City of Detroit,* 362 U.S. 440, 443–44, 80 S.Ct. 813, 816, 4 L.Ed.2d 852 (1960).

Thus, when a state adopts a law that facially discriminates against interstate commerce, the law is strictly scrutinized. When, however, the state law is nondiscriminatory on its face, a balancing test is used,

and the law will be sustained unless "the burden imposed on interstate commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc., supra,* 397 U.S. at 142, 90 S.Ct. at 847. A law may clearly affect interstate commerce, but its impact may be such that it will not be considered to be an impermissible burden.

*Pike* involved an action by a grower of high quality cantaloupes against an Arizona official who was enforcing an Arizona order which prohibited the grower from transporting uncrated cantaloupes to a nearby California city for packing and processing. The order required the grower to build an Arizona packing facility at the cost of $200,000. The Court in *Pike* concluded that the order was an unconstitutional burden on interstate commerce. The *Pike* case and its progeny represent dormant Commerce Clause cases, which do not address whether church or any other activities have an effect on interstate commerce.

■ When determining whether an activity affects commerce, the court should look at a particular activity's effect on interstate commerce as a whole, rather than the effect of an individual instance. *See generally Wickard v. Filburn,* 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942) (impact of the aggregate of individual activity on interstate commerce, which may be trivial alone, is far from trivial when considered together); *Slingluff v. Occupational Safety & Health Review Comm'n,* 425 F.3d 861 (10th Cir.2005) (stuccoing construction is an economic activity that, as an aggregate, affects interstate commerce).

■ "Religion and, in particular religious buildings actively used as the site and dynamic for a full range of activities, easily" qualifies as an entity that affects commerce. *See Cottonwood Christian Ctr. v. Cypress Redevelopment Agency,* 218 F.Supp.2d 1203, 1221 (C.D.Cal.2002) ("Church activities have a significant impact on interstate commerce."). Religious entities are "major participants in interstate markets for goods and services, use of interstate communications and transportation, raising and distributing revenues (including voluntary revenues) in-

terstate, and so on." *United States v. Grassie, supra,* 237 F.3d at 1209.

■ Here, the record shows that the rectory was used for a number of religious activities, including private and public Masses; confessions; prayer; bible study; adorations; solace; parish meetings; spiritual counseling; the Rite of Christian Initiation for Adults; reflection; writing homilies; discussing matters of private and public concern; hosting social occasions and meals for other priests, parishioners, staff, and parish volunteers; hosting live-in seminarians for summer internships; hosting visiting priests from other states and countries; preparing mass mailings for fundraising; and Knights of Columbus meetings.

We reject the trial court's contrary determination and conclude that the jurisdictional prerequisite under 42 U.S.C. § 2000cc(a)(2)(B) was met. The record reflects that the rectory and the chapel on its property were religious buildings actively used as the site and dynamic for a full range of religious activities. *See Cottonwood Christian Ctr. v. Cypress Redevelopment Agency, supra.* As such, the activity sufficiently affected commerce to invoke jurisdiction under RLUIPA. Under the clear language of RLUIPA, the jurisdictional prerequisite is met even when the activity has the slightest impact on commerce.

Foxfield argues that under *United States v. Tush,* 151 F.Supp.2d 1246 (D.Kan.2001), *aff'd,* 287 F.3d 1294 (10th Cir.2002), the rectory is a private residence and not a church, and so the religious activities held at the rectory did not affect interstate commerce. However, Foxfield ignores the facts that there was a separate building on the rectory's property that was used as a temporary chapel and that the rectory and chapel were buildings used by the Catholic Church to conduct a wide range of religious activities. Here, the rectory was more than Buelt's private residence.

### B. Individualized Assessment

However, even if we were to conclude that the jurisdictional prerequisite under 42 U.S.C. § 2000cc(a)(2)(B) was not met, RLUI-

PA would still apply here under 42 U.S.C. § 2000cc(a)(2)(C), because Ordinance No. 3 is only enforceable through an individualized assessment.

■ Individualized assessment requires "a case-by-case evaluation of the proposed activity of religious organizations" where "officials may use their authority to individually evaluate and either approve or disapprove of churches and synagogues in potentially discriminatory ways." *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1225 (11th Cir.2004). An action constitutes an individualized assessment when the decision is based upon a subjective determination. *See Axson–Flynn v. Johnson*, 356 F.3d 1277, 1297 (10th Cir.2004) (quoting *Employment Div. v. Smith*, 494 U.S. 872, 884, 110 S.Ct. 1595, 1603, 108 L.Ed.2d 876 (1990): "Such a system is one in which case-by-case inquiries are routinely made, such that there is an 'individualized governmental assessment of the reasons for the relevant conduct' that 'invite[s] considerations of the particular circumstances' involved in the particular case."); *see also Westchester Day Sch. v. Village of Mamaroneck*, 417 F.Supp.2d 477, 542 (S.D.N.Y.2006) (quoting *Living Water Church of God v. Charter Township of Meridian*, 384 F.Supp.2d 1123, 1130 (W.D.Mich. 2005): the application of even a neutral law of general applicability may constitute an individualized assessment upon its application to particular facts where the system does not involve a "mere numerical or mechanistic assessment" but rather "criteria that are at least partially subjective in nature").

■ The trial court concluded that the jurisdictional basis under 42 U.S.C. § 2000cc(a)(2)(C) was not met because the "ordinance provides for no discretion, evaluation, or case-by-case determination of any activity."

The court ignored Foxfield's delegation to its citizens of exclusive enforcement authority of Ordinance No. 3. We conclude that this exclusive delegation of enforcement authority constitutes a subjective system of individualized assessment, because the enforcement of Ordinance No. 3 was not uniform but was left entirely to the whim of Foxfield's citizens.

*See, e.g., Sts. Constantine & Helen Greek Orthodox Church, Inc. v. City of New Berlin*, 396 F.3d 895, 900 (7th Cir.2005) (a state's delegation of "essentially standardless discretion to nonprofessionals operating without procedural safeguards" results in subtle discrimination in the form of an individualized assessment); *see also Washington v. Roberge*, 278 U.S. 116, 49 S.Ct. 50, 73 L.Ed. 210 (1928) (where a zoning ordinance delegated power to owners of adjoining land, such owners, not bound by any official duty, could use those powers selfishly or arbitrarily); *Eubank v. City of Richmond*, 226 U.S. 137, 144, 33 S.Ct. 76, 77, 57 L.Ed. 156 (1912) (where an ordinance granted power to property owners without any standard by which the power was to be exercised, those property owners could use the delegation of power "solely for their own interest, or even capriciously"). Indeed, Foxfield itself retained no ability to enforce Ordinance No. 3 without some prior action by its citizens.

We therefore conclude that the jurisdictional prerequisites under both 42 U.S.C. § 2000cc(a)(2)(B) and (C) were met. The trial court erred when it granted summary judgment in favor of Foxfield, because there is a genuine issue of material fact as to the merits of the Archdiocese's and Buelt's RLUIPA claim. *See Martini v. Smith, supra.* Accordingly, on remand the trial court must determine the constitutionality of RLUIPA and address the merits of the RLUIPA claim. Because the denial of a summary judgment is not an appealable order, we need not consider Foxfield's contention that RLUIPA is unconstitutional; however, the trial court may consider that assertion on remand.

### III. FGWA

■ The Archdiocese and Buelt next contend that the trial court erred when it concluded that Ordinance No. 3 was not subject to FGWA because it is a general parking law. We agree.

FGWA prohibits any ordinance "that specifically limits when or how frequently individuals in the state may meet upon private residential property to pray, worship, or oth-

erwise study or discuss issues related to religious beliefs." Section 29–1–1202, C.R.S. 2005. FGWA is expressly inapplicable to "laws generally regulating traffic, parking, excessive noise, or other adverse conditions affecting the health, welfare, and safety of citizens of a local government." Section 29–1–1203, C.R.S.2005.

Here, the trial court concluded that Ordinance No. 3 is a general parking ordinance that is exempted from the application of FGWA under § 29–1–1203. The court found:

> While the ordinance may have the practical effect of limiting the number of people who can attend religious activities in one's home, all parking laws restrict these activities to some effect. For instance, the fact that an ordinance may prohibit parking on a certain street on Tuesdays is not unconstitutional simply because persons may not park their vehicles to attend religious gatherings on Tuesday. The fact that the Act specifically exempted general parking regulations reveals the legislature's particular sensitivity in this area. The further fact that the ordinance is enforced only upon written complaints by neighbors is nothing more than an enforcement technique, which does not make the ordinance anything less or more than a general parking law.

We do not agree that Ordinance No. 3 is a general parking ordinance. Rather, as Foxfield acknowledged in its own pleadings, "the Ordinance is essentially a hybrid ordinance combining the Town's authority to regulate zoning with the Town's general police power." This acknowledgement followed Foxfield's decision to promulgate the ordinance as part of its zoning regulations. Based upon the clear record before us, the ordinance is hybrid because it not only regulates parking, but also establishes a land use regulation. In addition to regulating parking on Foxfield's public streets, Ordinance No. 3 restricts a landowner's use of its property by dictating the number of vehicles that may be parked thereon. Even Foxfield concedes in its answer brief that Ordinance No. 3 was passed to target the parking activities that occurred upon the rectory's property.

We conclude that FGWA's exemption under § 29–1–1203 is not applicable here, and so there is a genuine issue of material fact as to the merits of the Archdiocese's and Buelt's FGWA claim. *See Martini v. Smith, supra.* Therefore, on remand the trial court shall address the merits of their FGWA claim.

## IV. Constitutionality of Ordinance No. 3

The Archdiocese and Buelt next contend that the trial court erred when it applied the intermediate scrutiny test to determine the constitutionality of Ordinance No. 3. We agree and conclude that the court should have applied strict scrutiny.

When an ordinance is both neutral and generally applicable, it need only be rationally related to a legitimate governmental interest to be constitutional. *See Grace United Methodist Church v. City of Cheyenne,* 451 F.3d 643 (10th Cir.2006); *see also Axson–Flynn v. Johnson, supra,* 356 F.3d at 1294 ("Neutral rules of general applicability ordinarily do not raise free exercise concerns even if they incidentally burden a particular religious practice or belief." (footnote omitted) ). But if the ordinance is not neutral or generally applicable, the court should subject the ordinance to strict scrutiny, and any burden on a religious practice must be narrowly tailored to advance a compelling governmental interest. *See Grace United Methodist Church v. City of Cheyenne, supra; see also Axson–Flynn v. Johnson, supra.*

"A rule that is discriminatorily motivated and applied is not a neutral rule of general applicability." *Axson–Flynn v. Johnson, supra,* 356 F.3d at 1294. A court should "apply a fact-specific inquiry to determine whether the regulation at issue was motivated by discriminatory animus, or whether the facts support an argument that the challenged rule is applied in a discriminatory fashion that disadvantages religious groups or organizations." *Grace United Methodist Church v. City of Cheyenne, supra,* 451 F.3d at 651.

Here, Ordinance No. 3 prohibits parking more than five motor vehicles for more than fifteen minutes on or within one thousand feet of private residential property on more than two occasions during any

thirty-day period. The ordinance is only enforceable after Foxfield receives three written complaints from three separate neighbors who reside within one thousand five hundred feet of the property.

The trial court found that Ordinance No. 3 is a general parking law that "applies neutrally and equally to all residents." Relying on *Ward v. Rock Against Racism*, 491 U.S. 781, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989), and *Denver Publishing Co. v. City of Aurora*, 896 P.2d 306 (Colo.1995), the court determined that Ordinance No. 3 "constitutes a time, place, and manner restriction," because it "is content-neutral, and regulates when, where, and how parking is to be performed." The court then applied intermediate scrutiny in determining the constitutionality of Ordinance No. 3 and concluded that the ordinance was narrowly tailored to serve Foxfield's significant governmental interest in safety.

We conclude that the trial court erred when it applied the intermediate scrutiny test, because Ordinance No. 3 is not generally applicable. Ordinance No. 3 is *only* enforceable after Foxfield receives three written complaints from three separate neighbors who reside within one thousand five hundred feet of the property. Hence, Ordinance No. 3 is not enforceable generally by Foxfield but instead places exclusive enforcement power into the hands of its citizens, without any guidelines or procedural safeguards. Such delegation of power leaves the enforcement of Ordinance No. 3 to the whim of its citizens who may arbitrarily enforce the ordinance if they are opposed to the activities of a particular neighbor.

Furthermore, there is ample evidence in the record to suggest that Ordinance No. 3 was passed specifically to target parking on the rectory's property in response to the protests of the rectory's neighbors.

Accordingly, the appropriate test for constitutional review of Ordinance No. 3 is strict scrutiny. Therefore, on remand the trial court is to determine the constitutionality of

Ordinance No. 3 under the appropriate standard.

## V. Cross–Appeal

In its cross-appeal, Foxfield contends that the trial court erred when it stayed the execution of the injunction pending appeal. In light of the conclusions we have reached, Foxfield's cross-appeal is moot.

The judgment is reversed, and the case is remanded to the trial court for trial on the issues of whether RLUIPA is constitutional, whether Ordinance No. 3 violates RLUIPA and FGWA, and whether Ordinance No. 3 is constitutional. On remand, the court should apply the strict scrutiny test in determining the constitutionality of Ordinance No. 3. The cross-appeal is dismissed.

TERRY and NIETO *, JJ., concur.