SHERIDAN REDEVELOPMENT AGENCY, a public body of the State of Colorado, Petitioner–Appellee,

v.

KNIGHTSBRIDGE LAND COMPANY, L.L.C.; Banner Holdings, L.L.C.; and HBC I, L.L.C., Respondents–Appellants.

No. 06CA1967.

Colorado Court of Appeals, Div. VI.

May 31, 2007.

Duncan, Ostrander & Dingess, P.C., Robert R. Duncan, Donald M. Ostrander, James Birch, Elizabeth D. Rubinstein, Denver, Colorado, for Petitioner–Appellee.

Lowe, Fell & Skogg, L.L.C., Kenneth K. Skogg, Karen L. Brody, Denver, Colorado, for Respondents–Appellants.

Opinion by Judge WEBB.

In this condemnation action arising from an urban renewal project, respondents, Knightsbridge Land Company, L.L.C., Banner Holdings, L.L.C., and HBC I, L.L.C., appeal the trial court's order vesting title to their property in favor of petitioner, Sheridan Redevelopment Agency. According to respondents, petitioner deprived them of an opportunity to develop their own property, contrary to statute and the urban renewal plan, because it did no more than allow them to participate in the developer selection process; the project was not based on the proper public purpose of eliminating blight but on an improper purpose of increasing tax revenues; and petitioner did not negotiate in good faith to purchase their property before initiating condemnation proceedings. We agree only to the extent that additional findings are required concerning public purpose. Hence, we vacate that part of the order, otherwise affirm, and remand for further proceedings.

## I. Facts

The following facts are undisputed. Respondents entered into a contract to purchase a vacant tract of land (the property) located in the City of Sheridan (Sheridan). While the property was under contract, respondents had ongoing discussions about their development plan for the property, which contemplated rezoning, with representatives of Sheridan and received some encouragement.

Later, but still before closing, a blight study was completed that included the property. Sheridan representatives then told respondents that an urban renewal plan was being prepared for a large tract of land which encompassed the property and a six-month moratorium would be imposed on rezoning. Nevertheless, respondents closed on the property.

Sheridan created petitioner and approved the South Santa Fe Drive Corridor Redevelopment Plan (redevelopment plan), which included the property. In response to petitioner's solicitation of redevelopment proposals, respondents submitted a redevelopment concept for the property. However, petitioner accepted the concept submitted by Miller Weingarten (Weingarten), another private company, to act as master developer of the entire redevelopment area, including the property.

Following unsuccessful efforts to purchase the property, petitioner instituted this condemnation action against respondents. The trial court held several days of hearings and

entered an order for immediate possession that included extensive findings. It also found for petitioner at the vesting hearing, making a bench ruling that incorporated the findings and conclusions from its earlier order. Respondents appeal the vesting order under § 38–7–103, C.R.S.2006.

## II. The Statute and the Redevelopment Plan

Although respondents disclaim an absolute right to redevelop the property, they contend that petitioner violated both § 31–25–107, C.R.S.2006, and the redevelopment plan by failing to provide them with a "full opportunity" to redevelop their own property. Respondents agree that § 31–25–107(3)(b), C.R.S.2006, which mandates that a blight finding be made "without regard to the economic performance of the property to be acquired," does not apply here because petitioner made its blight determination in 2003, before this section was added. Hence, we consider only whether they benefited from either a statutory right to, or promise in the redevelopment plan of, an opportunity to redevelop the property beyond participation in the developer selection process, and we conclude that they did not.

### A.

We first address the parties' disagreement over the standard of review: respondents seek de novo review; petitioner responds that we should review only for sufficiency of the evidence under the clear error standard. We have located no Colorado eminent domain case adopting either position.

■ "Where there is a mixed question of law and fact, the reviewing court will give deference to the trial court's factual findings, absent an abuse of discretion," but will independently review questions of law. *Sanger v. Dennis*, 148 P.3d 404, 410 (Colo.App.2006) (preliminary injunction limiting campaign financing rule); *accord Chapman v. Willey*, 134 P.3d 568 (Colo.App.2006) (premises liability act). *But see E–470 Pub. Highway Auth. v. 455 Co.*, 3 P.3d 18, 22 (Colo.2000) ("When the issue before the appellate court is a mixed question of law and fact, the court may" (1) "treat the ultimate conclusion as

one of fact for purposes of review and apply the clear error standard"; (2) "conclude that a mixed question of fact and law demands de novo review"; or (3) "review the findings of fact for clear error and still look de novo at the legal conclusions that the trial court drew from those factual findings.").

■ Here, we perceive mixed questions of law and fact because we must first consider what the statute and the redevelopment plan require, a legal question, and we must then consider whether petitioner complied with the statute and the redevelopment plan, a factual question. We perceive these questions as distinct and discern no benefit to reviewing both questions for either clear error or de novo.

Thus, we will afford the traditional deference to the trial court's extensive findings regarding petitioner's actions, *see M.D.C./ Wood, Inc. v. Mortimer*, 866 P.2d 1380, 1382 (Colo.1994)(a trial court's determination regarding factual questions will be upheld unless it lacks support in the record), while interpreting the statute and the plan independent of the trial court. *See City & County of Denver v. Block 173 Assocs.*, 814 P.2d 824, 829 (Colo.1991) (interpretation of an urban renewal plan is a legal question reviewed de novo).

Nevertheless, we echo the trial court's observation that, despite extensive public debate over the role which private property should play "in future development of our cities," the role of courts is not "to enter into that policy debate by setting aside the determinations of elected public officials made after due deliberation."

### B.

We reject respondents' contention that petitioner deprived them of the opportunity to develop the property by failing to comply with § 31–25–107.

We look "to the plain meaning of the statute, and if the language is clear and the intent of the General Assembly may be discerned with certainty, we need not resort to other rules of statutory interpretation." *W. Fire Truck, Inc. v. Emergency One, Inc.*, 134

P.3d 570, 573 (Colo.App.2006); *see also Hensley v. Tri–QSI Denver Corp.,* 98 P.3d 965, 968 (Colo.App.2004)("If the statute is unambiguous, we need look no further.").

Section 31–25–106(2), C.R.S.2006, requires that redevelopment entities seek proposals for urban renewal, consider all such proposals, weigh the financial ability of the bidders, and accept the proposal "it deems to be in the public interest." Urban renewal plans must "afford maximum opportunity, consistent with the sound needs of the municipality as a whole, for the rehabilitation or redevelopment of the urban renewal area by *private enterprise.*" Section 31–25–107(4)(g), C.R.S. 2006 (emphasis added).

■ We perceive this language as unambiguous. The statute refers to redevelopment by "private enterprise," not by landowners. We are not free to add language to a statute. *People v. Cross,* 127 P.3d 71, 73 (Colo.2006). Thus, we discern no support for respondents' view that the statute requires petitioner to afford landowners any opportunity to redevelop their own land beyond participating in the developer selection process.

Weingarten, a private enterprise, was chosen as master developer through a selection process in which respondents participated and which, as discussed below, the trial court found to be proper. Hence, we need not address what actions are mandated by the "maximum opportunity" clause.

Accordingly, we conclude that the trial court did not err in finding petitioner complied with § 31–25–107.

■ Nevertheless, § 31–25–107(1), C.R.S. 2006, provides that an urban renewal authority "shall not acquire real property for an urban renewal project unless the local governing body has approved the urban renewal plan." Once a redevelopment plan has been approved, "the provisions of said plan with respect to the ... procedure applicable to the property covered by said plan shall be controlling with respect thereto." Section 31–25–107(8), C.R.S.2006.

Therefore, we agree that respondents can enforce the redevelopment plan under the statute, and turn to whether the plan promises them any right to redevelop the property beyond participation in the developer selection process.

### C.

We also reject respondents' contention that petitioner did not comply with the redevelopment plan, and thereby deprived them of the full opportunity to redevelop the property.

■ The terms of a contract "must be sufficiently definite to enable the court to determine whether the contract has been performed or not." *Stice v. Peterson,* 144 Colo. 219, 224, 355 P.2d 948, 952 (1960) (quoting *Newton Oil Co. v. Bockhold,* 115 Colo. 510, 518, 176 P.2d 904, 908 (1947)); *see also Hoyt v. Target Stores,* 981 P.2d 188, 194 (Colo.App.1998) (a contractual term "must be sufficiently specific so that the judiciary can understand the obligation assumed and enforce the promise according to its terms").

Respondents rely on the following provisions of the redevelopment plan as establishing a promise that they be provided with a full opportunity to redevelop their property:

E. Redevelopment Plan Goals

. . . .

(5) To develop an implementation strategy that *encourages* private property owners and private developers and *gives them full opportunity* to voluntarily follow an approved plan and regulatory process to work with the City to redevelop the Area.

. . . .

G. Development Plan

. . . .

(5) The Agency *should* encourage the improvement of private property throughout the Redevelopment Area by the private sector and property owners. Each new development in the Area *will* be required to comply with the City of Sheridan Comprehensive Plan, applicable City codes and regulations, and this Plan. All new development and redevelopment *shall* be reviewed to insure that development is in conformance with this Plan

. . . .

(Emphasis added.)

We are not persuaded that either of these sections affords respondents and other landowners any development rights beyond having their proposals considered along with those of nonlandowner developers.

### 1.

We disagree that redevelopment plan goal E5 required petitioner to afford respondents any opportunity to redevelop their own property beyond participating in the selection process. This goal was only one of the eighteen redevelopment goals, all of which merely illustrated "purposes." A "goal" connotes an aspirational, not a mandatory, term. *Harvey v. Marshall,* 389 Md. 243, 884 A.2d 1171, 1202 n. 31 (2005); *see also Webster's Third New International Dictionary* 972 (3d ed.1986) (defining "goal" as "the end toward which effort or ambition is directed to strive for: a condition or state to be brought about through a course of action").

The terms "encourage" and "full opportunity" are imprecise. We cannot discern the meaning of such vague terms and therefore reject respondents' interpretation that they enjoyed any redevelopment right beyond participating in the selection process.

Further, the plain language of this goal encompasses both "private property owners and private developers." It does not single out landowners. And the "full opportunity" is to "redevelop the Area," a defined term that means the entire project.

Additionally, petitioner has broad discretion to consider which private developer proposal would be most suitable for the redevelopment plan. *See* § 31–25–106(2) ("The authority may accept such proposal as it deems to be in the public interest. . . ."). Even assuming that petitioner could have limited this statutory prerogative, we would reach such an interpretation only based on clear language in the redevelopment plan. We discern no clear language here.

### 2.

We also disagree that use of "should" in development plan section G(5) obligates petitioner to do more than allow landowners who seek to redevelop only their own land an opportunity to participate in the developer selection process.

The word " '[s]hould' generally denotes discretion and should not be construed as 'shall.' " 3 *Sutherland Statutory Construction* § 57:3, at 86 (6th ed.). Although in some instances "should" connotes mandatory language, *see, e.g., People v. Romero,* 953 P.2d 550, 557 (Colo.1998), its use must be compared to other mandatory language in the same provision. Use of "shall" in the same provision that includes "should" reflects that the drafter intended different meanings for the two terms. *Washington v. Crowder,* 12 P.3d 857, 859 (Colo.App.2000).

Here, we believe the drafters of the redevelopment plan intended that the term be discretionary not mandatory because (1) "should" generally indicates discretion, and (2) the mandatory terms of "will" and "shall" were included in the same clause.

Accordingly, we conclude that the sections of the redevelopment plan on which respondents rely create no promise of landowner-specific redevelopment opportunities enforceable under § 31–25–107(8).

### D.

Moreover, even assuming that the plan established such a redevelopment opportunity that could be enforced for respondents' benefit under § 31–25–107(8), we discern no basis for disturbing the trial court's extensive findings that they participated in a fundamentally fair developer selection process.

The trial court found that: (1) "The City encouraged . . . Weingarten and, later, [respondents] and other developers and land owners, to put forth improvement plans in good faith"; (2) petitioner provided an open, competitive, and participatory process in which it afforded landowners additional time to refine their proposals and then sufficiently considered respondents' proposed redevelopment plan; (3) no credible evidence was presented on "any secret deals" which would suggest that petitioner "did not properly exercise its discretion in moving forward with

. . . Weingarten as the preferred developer"; (4) remediating the entire area through one developer, namely Weingarten, would be more efficient than remediating various tracts within the urban renewal area separately through owner redevelopment; (5) the authority was impressed with Weingarten's "financial wherewithal to complete the project," which is a proper consideration under § 31–25–106(2); (6) "petitioner checked all the boxes" of the formal requirements during the proceedings; and (7) petitioner used "independent and qualified experts to assist with almost every aspect of the process and relied upon their findings and advice."

Although the evidence was hotly contested, because these factual findings have record support we cannot disturb them.

Accordingly, we conclude that the trial court did not err in finding that petitioner sufficiently complied with § 31–25–107 and the redevelopment plan by affording respondents an opportunity to participate in the developer selection process.

### III.   Public Purpose

■ Respondents further contend the trial court applied an incorrect legal standard in stating that it would not overturn petitioner's public purpose determination absent a finding of bad faith. We agree and therefore remand for further findings using the correct standard discussed below.

### A.

■ A trial court ruling made with an incorrect legal standard must be reversed and the case remanded to afford the court an opportunity to apply the correct standard to the facts as it finds them. *See Town of Foxfield v. Archdiocese of Denver*, 148 P.3d 339, 347 (Colo.App.2006) (remanding case to trial court to apply correct standard).

"An authority shall not actually undertake an urban renewal project for an urban renewal area unless based on evidence presented at a public hearing the governing body, by resolution, has determined such area to be a slum, blighted area, or a combination thereof and designated such area as appropriate for

an urban renewal project." Section 31–25–107(1).

The Colorado Constitution, art. II, § 15, provides:

[W]henever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be really public shall be a *judicial question*, and determined as such *without regard to any legislative assertion* that the use is public.

(Emphasis added.)

■ Thus, "[i]n examining the stated public purpose for a condemnation, we look to whether the stated public purpose is supported by the record." *City & County of Denver v. Block 173 Assocs., supra*, 814 P.2d at 828–29. If support exists, our inquiry ends. *City & County of Denver v. Block 173 Assocs., supra*, 814 P.2d at 829.

■ In contrast, "[a] determination of necessity or that an area is blighted . . . is not reviewable absent a showing of bad faith or fraud." *City & County of Denver v. Block 173 Assocs., supra*, 814 P.2d at 829.

Here, the trial court first concluded that it would not "substitute its judgment" for Sheridan's determination that the property "is within a blighted area." The court then acknowledged respondents' assertion that the blight determination was "incident to the true and improper purpose . . . to increase tax revenues for the City." The court rejected this assertion on the basis that Sheridan "was not required to base its determination of blight without regard to the economic performance of the property to be acquired."

Although the trial court recognized that it could "look behind the finding [of blight] to determine the actual purpose of the urban renewal plan from the record," it made no express conclusion that elimination of blight was the actual purpose established by the record before the Sheridan City Council. Instead, as to this issue it concluded:

Based on the records, the Court *will not set aside* the stated purpose of the Council and [petitioner], which is a proper public purpose and use. *The facts do not rise to the level of bad faith.* This proceeding cannot properly be dismissed based upon a

lack of a public purpose or necessity for the taking.

(Emphasis added.)

The court's "will not set aside" wording suggests improper deference to Sheridan's public policy determination. We note that respondents presented evidence recognized by the trial court supporting their position that Sheridan primarily sought to increase tax revenues, not to eliminate blight. Hence, we conclude that the court may have incorrectly discounted this evidence because it confused necessity, which requires a finding of bad faith on the part of the redevelopment authority before a trial court can overturn the authority's decision, with public purpose, which does not.

### B.

Petitioner responds that even if the trial court did err by requiring proof of bad faith before it would overturn Sheridan's public purpose determination, such error was invited by respondents because they asked the trial court to rule for them on both public purpose and necessity based on petitioner's alleged bad faith. We disagree.

Under the doctrine of invited error, "a party may not complain on appeal of an error that he has invited or injected into the case; he must abide by the consequences of his acts." *Horton v. Suthers*, 43 P.3d 611, 618 (Colo.2002)(quoting *People v. Zapata*, 779 P.2d 1307, 1309 (Colo.1989)). The doctrine "is triggered by actions taken by a party in the course of litigation." *Horton v. Suthers, supra*, 43 P.3d at 618.

We discern no invited error here because respondents also argued for independent judicial inquiry, citing Colorado Constitution art. II, § 15. Respondents further argued that it is the "court's role in reviewing a condemning authority's decision that a proposed taking is for public use ... to determine whether the essential purpose is to obtain public benefit," citing *City & County of Denver v. Block 173 Associates, supra*, 814 P.2d at 829.

Accordingly, we conclude that remand is necessary so the trial court can independently examine the public purpose of the condemnation based on the record of proceedings before Sheridan, and without either deferring to Sheridan's determination or considering bad faith, and make findings from the existing record reflecting that examination.

### IV. Good Faith Negotiation

Respondents next contend the trial court erred in finding that the good faith negotiation requirement was satisfied. We disagree.

Condemnation is only appropriate if "the compensation to be paid for, in respect of property sought to be appropriated ... cannot be agreed upon by the parties interested." Section 38–1–102(1), C.R.S. 2006. This "good faith negotiation requirement is satisfied where the condemning authority makes a reasonable good faith offer to reach an agreement with the owner of the property and allows the owner sufficient time to respond." *City of Holyoke v. Schlachter Farms R.L.L.P.*, 22 P.3d 960, 963 (Colo.App. 2001). "Lengthy or face-to-face negotiations are not required." *City of Holyoke v. Schlachter Farms R.L.L.P., supra*, 22 P.3d at 963 (quoting *City of Thornton v. Farmers Reservoir & Irrigation Co.*, 194 Colo. 526, 539, 575 P.2d 382, 392 (1978)). Thus, a condemnation action may be commenced where "the property owner remains silent or rejects the offer without making an acceptable counteroffer." *Bd. of County Comm'rs v. Blecha*, 697 P.2d 416, 418 (Colo.App.1985).

Here, the property was appraised at $1,992,000 by petitioner's appraiser. Petitioner offered respondents $2,129,180 and tendered a copy of the appraisal. This offer was not accepted and expired by its terms. Petitioner then made a second offer of $2,590,000. After the second offer had also expired, respondents requested face-to-face negotiations. No such negotiations took place. Respondents then submitted a counteroffer of $5,500,000, unsupported by an appraisal. Again, no negotiations took place.

We conclude that the record supports the trial court's determination because (1) petitioner made two separate offers, both of which exceeded the appraisal, (2) respondents declined to accept either offer, al-

though they had been afforded a reasonable time in which to do so, and (3) their only counteroffer was substantially greater than either of petitioner's offers and the only appraisal.

Respondents argue that the trial court misapplied the law by emphasizing the absence of an appraisal supporting their counteroffer. But such a consideration is proper, even if not alone determinative of good faith negotiations. *See City of Holyoke v. Schlachter Farms R.L.L.P., supra,* 22 P.3d at 963–64 (considering as a factor that landlord's counteroffer was unsupported by an appraisal).

Accordingly, we conclude that the trial court did not err in finding that the good faith negotiation requirement was satisfied.

## V. Attorney Fees

■■■ Respondents finally contend that if the trial court's order is set aside, they are entitled to reasonable attorney fees and costs incurred in this litigation. We conclude that this claim is not yet ripe, and thus we will not consider it.

Section 38–1–122(1), C.R.S.2006, provides:

If the court finds that a petitioner is not authorized by law to acquire real property or interests therein sought in a condemnation proceeding, it shall award reasonable attorney fees, in addition to any other costs assessed, to the property owner who participated in the proceedings.

■■■ "The doctrine of ripeness requires 'an actual case or controversy between the parties that is sufficiently immediate and real so as to warrant adjudication.' " *Jessee v. Farmers Ins. Exch.,* 147 P.3d 56, 59 (Colo. 2006) (quoting *Beauprez v. Avalos,* 42 P.3d 642, 648 (Colo.2002)).

Here, because we are affirming in part and remanding for further findings regarding public purpose, whether petitioner's attempt to acquire for the proper purpose will be upheld or rejected is unknown. Hence, no basis presently exists for awarding attorney fees to respondents.

The order is vacated as to the public purpose determination, it is affirmed in all other respects, and the case is remanded for proceedings consistent with this opinion.

Chief Judge DAVIDSON and Judge FURMAN concur.